**Wilbert W. YATES and Eleanor P. Yates, Appellees,**

**v.**

**William B. JAMISON, Superintendent of Building Inspection; The City of Charlotte, North Carolina; Mason Watkins, Chief Housing Inspector for the City of Charlotte and Various Unknown Agents of the City of Charlotte, Appellants.**

**No. 84–1436.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1985.

Decided Feb. 3, 1986.

Rehearing and Rehearing En Banc Denied April 29, 1986.

---

**6.** This consideration should, of course, follow clarification of the two findings mentioned in the preceding paragraph.

F. Douglas Canty, Charlotte, N.C., for appellants.

Thomas M. Tillett (Dozier, Brackett, Miller, Pollard & Murphy, Charlotte, N.C., on brief), for appellees.

Before ERVIN and CHAPMAN, Circuit Judges and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

Plaintiffs Wilbert and Eleanor Yates brought this 42 U.S.C. § 1983 action against the City of Charlotte and its agents alleging that defendants had destroyed a house they owned without notice in violation of the due process clause of the fourteenth amendment. We granted defendants permission to file this interlocutory appeal under 28 U.S.C. § 1292(b) after the district court denied their motion to dismiss plaintiffs' complaint for a failure to state a claim upon which relief could be granted, Fed.R.Civ.P. 12(b)(6). We hold that the Supreme Court's decision in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), requires the dismissal of the plaintiffs' complaint and accordingly reverse.

I

For purposes of this appeal we accept as true the allegations of the complaint. Sometime in mid-1980 Charlotte's then Superintendent of Building Inspection, William B. Jamison, or one of his agents, inspected a house plaintiffs owned and found it to be unfit for human habitation. Accordingly, the Charlotte City Council adopted a local ordinance which directed Jamison, as the Superintendent of Building Inspection, to demolish the house and remove the debris. Without notifying plaintiffs of the pending demolition Jamison and his agents then demolished the house. Plaintiffs were residents of Fayetteville, North Carolina, and were unaware of the City's actions.

Neither state nor city procedures authorize the demolition of a dwelling without a predeprivation hearing. North Carolina law requires a predeprivation hearing where possible, *N.C.Gen.Stat.* § 160A–443(2) and (3) (1982), and local officials are required to exercise reasonable diligence to ascertain the identities and whereabouts of property owners. *N.C.Gen.Stat.* § 160A–445 (1982). The City of Charlotte has adopted housing regulations which contain the provisions required by the General Statutes. *See Charlotte N.C. Code* §§ 10A–12 and 10A–13.

Plaintiffs allege that defendants deprived them of their property without due process of law in violation of the due process clause of the fourteenth amendment by failing to provide them with notice of the proceedings that led to the demolition of their house. According to plaintiffs' complaint, the defendants' failure to provide such notice was the result of the willful and reckless negligence of Jamison and defendant Mason Watkins in failing to search the public records adequately to ascertain plaintiffs' correct address while acting in their official capacities as agents

of the City of Charlotte. The complaint also specifically alleges that Jamison and Watkins were under a duty imposed by law to exercise reasonable diligence to locate plaintiffs' address and provide them with notice and an opportunity to be heard. Furthermore, plaintiffs allege that defendants' failure to search the public records adequately to ascertain the correct address prior to the demolition "represented an exercise of policy or custom in the operation of the government of the defendant, City of Charlotte."

## II

The sole issue in this appeal is whether the Supreme Court's decision in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), requires the dismissal of plaintiffs' complaint. In *Parratt* the Supreme Court held that a state official's random and unauthorized negligent act which caused the loss of a prisoner's personal property was not a violation of due process because the state provided a meaningful postdeprivation remedy. Similarly, in *Palmer v. Hudson*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that *Parratt*'s holding includes the intentional destruction of a prisoner's property by a random and unauthorized act, provided the state makes available a meaningful postdeprivation remedy. Thus, *Parratt* and *Palmer* established the rule that a government official's random and unauthorized act, whether intentional or negligent, which causes the loss of private property is not a violation of procedural due process when the state provides a meaningful postdeprivation remedy. The rationale is that because the wrongful act is not sanctioned by any established procedure, and because state law provides a means for the plaintiff to be made whole for his loss occasioned by the wrongful act, there has been no denial of procedural due process because the state action is not necessarily complete until the termination of the state's postdeprivation remedy.

In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265

(1982), however, the Supreme Court held that postdeprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to "established state procedure," rather than random and unauthorized action. In *Logan* the "established state procedure" was an Illinois statute which deprived a claimant of an opportunity to pursue his employment discrimination claim if the Illinois Fair Employment Practices Commission failed to convene a fact-finding conference within 120 days after a claimant filed a charge of unlawful conduct. *Id.* at 435-36, 102 S.Ct. at 1157-58. The Supreme Court stated:

> In *Parratt*, the Court emphasized that it was dealing with "a tortious loss of ... property as a result of a random and unauthorized act by a state employee ... not a result of some established state procedure." 451 U.S. at 541 [101 S.Ct. at 1916]. Here, in contrast, it is the state system itself that destroys a complainant's property interest, by operation of law, whenever the Commission fails to convene a timely conference—whether the Commission's action is taken through negligence, maliciousness, or otherwise. *Parratt* was not designed to reach such a situation.... *Unlike the complainant in Parratt, Logan is challenging not the Commission's error, but the "established state procedure" that destroys his entitlement without according him proper procedural safeguards.*

*Id.* (emphasis added) (citation omitted).

Plaintiffs contend that *Logan v. Zimmerman Brush Co.*, governs this case because they have alleged that defendants' failure to search the public records adequately to ascertain the correct address prior to the demolition "represented an exercise of policy or custom in the operation of the government of the defendant, City of Charlotte." We disagree. *Logan* is distinguishable from this case. In *Logan* the Supreme Court emphasized that the plaintiff was challenging "not the Commission's error, but the 'established state procedure.'" *Id.* at 436, 102 S.Ct. at 1158. The state procedure was set forth in the Illinois

statute. Thus, the Court's holding in *Logan* rests on its conclusion that "it is the state system itself that destroys a complainant's property interest." *Id.*

In this case, however, plaintiffs allege that their house was destroyed without notice because defendants were "willfully and recklessly negligent" in failing to comply with the notice and hearing procedures mandated by state law. In other words, plaintiffs allege that their house was destroyed without notice only because the defendants violated established state procedure. They do not challenge the operation of the North Carolina statute or the Charlotte ordinance which require notice and a hearing prior to the demolition of a dwelling. Thus, we think plaintiffs have alleged facts which fall within the rule of *Parratt v. Taylor.*

Furthermore, the plaintiffs possess an adequate and meaningful postdeprivation remedy in the form of an action in state court for inverse condemnation. An action for inverse condemnation arises from Article 1, § 19 of the North Carolina Constitution and is now recognized and regulated by statute. *See N.C.Gen.Stat.* § 40A–51(a) (1984). Under § 40A–51(a), if property is taken by an act or omission of a municipality and no complaint containing a declaration of taking is filed by the municipality, the owner of the property may file an action seeking compensation. The measure of compensation for a taking is the greater of either (1) the fair market value of the entire tract immediately before the taking less the fair market value of the remainder immediately after the taking, or (2) the fair market value of the property taken. § 40A–64. As an element of cost in an action filed under § 40A–51(a), the court must award the property owner his reasonable attorney's fees if judgment is in his favor. § 40A–8. Moreover, the allegations of the plaintiffs' complaint would also support a state action against the city officials who caused the property deprivation. *See Gallimore v. Sink*, 27 N.C.App. 65, 67, 218 S.E.2d 181, 183 (1975); *Wilkins v. Whitaker*, 714 F.2d 4 (4th Cir.1983).

Plaintiffs maintain that their postdeprivation remedy is inadequate because a former City charter provision would bar their inverse condemnation action. Although the City charter provision has been repealed, plaintiffs insist that their cause of action is barred by the provision because their claim was pending at the time the provision was repealed and because they failed to file the required notice within the time period specified in the provision. However, several North Carolina cases have held specifically that similar notice provisions were inapplicable to claims for unconstitutional deprivations of property. *See Charlotte Consolidated Construction Co. v. City of Charlotte*, 208 N.C. 309, 180 S.E. 573 (1935); *Lyda v. Town of Marion*, 239 N.C. 265, 79 S.E.2d 726 (1954). Also, in *Stephens Co. v. City of Charlotte*, 201 N.C. 258, 159 S.E. 414 (1931), the North Carolina Supreme Court held that a similar city charter provision, which applied to all "action[s] for damages against said City of any character whatsoever, to either person or property," did not apply to an inverse condemnation action:

> From a careful perusal of all the cases bearing upon the subject, the court is of the opinion that the *statutory* provision, with respect to notice, does not include a claim for compensation arising out of the physical appropriation of private property for public use.

201 N.C. at 261, 159 S.E. at 416 (emphasis added).

We hold that *Parratt v. Taylor* requires the dismissal of plaintiffs' complaint because they possess an adequate and meaningful postdeprivation remedy in the form of an action for inverse condemnation in state court. Accordingly, this case is remanded to the district court with instructions that it grant the defendants' motion to dismiss for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

REVERSED.

ERVIN, Circuit Judge, dissenting:

Being convinced that the district court acted properly in denying the defendants'

motion to dismiss for failure to state a claim upon which relief can be granted, I respectfully dissent.

The majority states the sole issue to be whether *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Palmer v. Hudson,* 697 F.2d 1220 (4th Cir. 1983), *modified,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), require a dismissal of the plaintiffs' complaint. I am persuaded that my colleagues have misapplied *Parratt* and its progeny, and that their decision is an unwarranted extension of the *Parratt* doctrine.

### I.

The plaintiffs, who have resided in Fayetteville, North Carolina, for a number of years, owned a dwelling house located at 127 Oakdale Road in Charlotte, some 141 miles from their place of abode. On June 23, 1980, the City Council of the City of Charlotte adopted an ordinance stating that the Superintendent of Building Inspection for the City of Charlotte had found the Yates house to be unfit for human habitation and directing that the house be demolished and removed from the Oakdale Road site. Acting upon this ordinance, agents of the city entered upon the property of the Yates and demolished and destroyed their house. Thereafter, the city filed a lien against the Yates in the sum of $617.00, for the cost of the demolition of the structure.

On September 2, 1983, the Yates brought this action, alleging that their house was demolished without notice and an opportunity for a hearing, in violation of due process of law. They contended that they received no notice that the City Council intended to consider the condemnation of their property, nor were they advised of the enactment of the ordinance. As a result, they were given no opportunity to be heard and no chance to correct the conditions which led to the condemnation. They further alleged that

> The failure of defendant Jamison (the Superintendent of Building Inspection) to utilize due diligence to check the public records of the City of Charlotte and of Mecklenburg County, or to cause said records to be checked, to the end that the plaintiffs might be notified and given an opportunity to be heard prior to the demolition of their property, *represented an exercise of policy or custom in the operation of the government of the defendant, City of Charlotte.* (emphasis added).

(App. 6).

The Yates also claim that Jamison had ready access to their current mailing address, and that he was under a legal duty under North Carolina law to exercise reasonable diligence to ascertain their whereabouts before demolishing their house. The district court, in denying the defendants' motion to dismiss, ruled that the Yates were not required to plead or to prove that no adequate remedy at state law for the alleged deprivation of their property exists; therefore, the complaint does state a claim for which relief may be granted. (App. 31). As an alternative ground supporting the district court's ruling, the Yates also deny that there is an adequate state remedy in this situation.

### II.

I agree with my brothers that the applicability of *Parratt* and *Hudson* to these facts must be addressed. *Parratt* involved the negligent and unauthorized loss of a prisoner's hobby kit by state prison officials. The Supreme Court ruled that the prisoner did not have a § 1983 cause of action for deprivation of his property without due process of law because adequate remedies existed under state tort law. The question there was whether the constitution mandated a predeprivation hearing prior to a random, unauthorized, negligent taking of property by a state employee. The Court noted that "some kind of hearing is required at some time before a state finally deprives a person of his property interests. The fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.'" *Parratt,* 451 U.S.

at 540, 101 S.Ct. at 1915 (quoting *Armstrong v. Manzo* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). However, the Court had previously rejected the contention that due process *"always* requires the state to provide a hearing prior to the initial deprivation of property. This rejection is based in part on the impracticability in some cases of providing any preseizure hearing under the state-authorized procedure and the assumption that at some time a full and meaningful hearing will be available." *Parratt,* 451 U.S. at 540–41, 101 S.Ct. at 1915–16 (emphasis in original). The Court found that although the plaintiff in *Parratt* had been "deprived of property under color of state law, the deprivation did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of state agents to follow established state procedure." *Id.* at 543, 101 S.Ct. at 1917. The Court also found that state tort remedies "could have fully compensated the respondent for the property loss he suffered." *Id.* at 544, 101 S.Ct. at 1917. The Court was leery of turning the fourteenth amendment into a " 'font of tort law.' " *Id.* at 544, 101 S.Ct. at 1917 (quoting *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). The Court also considered a predeprivation hearing "not only impracticable, but impossible" where the taking is unauthorized. *Parratt,* 451 U.S. at 541, 101 S.Ct. at 1916. Consequently, the Court concluded that the state postdeprivation tort remedy was adequate to meet the requirements of due process. *Id.* at 544, 101 S.Ct. at 1917. The holding in *Parratt* was limited to negligent and unauthorized takings.

In *Hudson,* the Court extended *Parratt* to cases involving intentional and unauthorized takings. In *Hudson,* a state prison officer intentionally destroyed a prisoner's property. Though intentional, the destruction was "random and unauthorized." *See Palmer v. Hudson,* 697 F.2d 1220 (4th Cir. 1983), *modified,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The Supreme Court noted that

The underlying rationale of *Parratt* is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply "impracticable" since the state cannot know when such deprivations will occur. We can discern no logical distinction between negligent and intentional deprivations of property insofar as the "practicability" of affording predeprivation process is concerned. The State can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct. Arguably, intentional acts are even more difficult to anticipate because one bent on intentionally depriving a person of his property might well take affirmative steps to avoid signalling his intent.

If negligent deprivations of property do not violate the Due Process Clause because predeprivation process is impracticable, it follows that intentional deprivations do not violate that clause, provided, of course, that adequate state postdeprivation remedies are available. Accordingly, we hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the State's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson,* 468 U.S. at —– ––, 104 S.Ct. at 3203–04, 82 L.Ed.2d at 407–08. Because an adequate state tort remedy existed, the Court concluded that the intentional and unauthorized taking in *Hudson* did not violate the due process clause. *Id.* 468 U.S. at ––, 104 S.Ct. at 3205, 82 L.Ed.2d at 409.

Under *Parratt* and *Hudson,* a complaint alleging an unauthorized taking by a state employee must also allege that no adequate state law remedy exists in order to make

out a valid cause of action under § 1983. The plaintiffs in this case do not claim that the taking without notice was unauthorized. Rather, they claim that it "represented an exercise of policy or custom" of the City of Charlotte. As the holdings of *Parratt* and *Hudson* are clearly limited to *unauthorized* takings, these cases do not dispose of the issue in the case at bar. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (discussed *infra* at 1189–1191). Further, the reasoning behind *Parratt* and *Hudson* that a preseizure hearing is sometimes impracticable or impossible due to a state's inability to anticipate the need for it is simply inapplicable in a case such as this where the taking without notice is alleged to be pursuant to city policy.

### III.

As the Supreme Court noted in *Parratt*, a long line of due process cases has required a predeprivation hearing before a state may deprive a person of property. This has been true in cases where "deprivations of property were authorized by an established state procedure and due process was held to require predeprivation notice and hearing in order to serve as a check on the possibility that a wrongful deprivation would occur." *Parratt*, 541 U.S. at 538, 101 S.Ct. at 1914. In *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), for example, state prejudgment replevin laws were found to violate the due process clause because of their failure to provide a preseizure hearing. The fact that household goods wrongly seized could be sought through a postseizure hearing process provided under state law was found to be insufficient to satisfy the requirements of due process. According to the court,

> The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use

and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a private party. So viewed, the prohibition against the deprivation of property without due process of law reflects the high value embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference. *See Lynch v. Household Finance Corp.*, 405 U.S. 538, 552, 31 L.Ed.2d 424, 435, 92 S.Ct. 1113 [1122].

> The requirement of notice and an opportunity to be heard raises no impenetrable barrier to the taking of a person's possessions. But the fair process of decision making that it guarantees works, by itself, to protect against arbitrary deprivation of property. For when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented. It has long been recognized that "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights ... [and] no better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it." *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170–172, 95 L.Ed.2d 817, 853, 854, 71 S.Ct. 624 [648–49] (Frankfurter, J., concurring).

*Fuentes*, 407 U.S. at 80–81, 92 S.Ct. at 1994.

Consequently, the *Fuentes* Court found that

> If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first

place. Damage may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred. This Court has not embraced the general proposition that a wrong may be done if it can be undone. *Stanley v. Illinois,* 405 U.S. 645, 647, 31 L.Ed.2d 551, 556, 92 S.Ct. 1208 [1210–11].

*Id.* at 81–82, 92 S.Ct. at 1994–95. The Court noted that while "due process tolerates variances in the *form* of a hearing, ... the Court has traditionally insisted that, whatever its form, opportunity for that hearing must be provided before the deprivation at issue takes effect." *Id.* at 82, 92 S.Ct. at 1995 (emphasis in original). Important to the due process right is its

> "root requirement that an individual be given an opportunity for a hearing before he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."

*Id.* at 82, 92 S.Ct. at 1995 (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 787, 28 L.Ed.2d 113 (1971). While certain "extraordinary situations" might justify a post-deprivation hearing, *see, e.g., North American Cold Storage Co. v. Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (public health emergency justified seizure of unwholesome food without preseizure hearing), the *Fuentes* Court believed that such situations "must be truly unusual." *Fuentes,* 407 U.S. at 90, 92 S.Ct. at 1999.

The Supreme Court reaffirmed the traditional due process principles enunciated in *Fuentes* in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). In that case, the Court held that the plaintiff's due process rights had been violated when the Illinois Fair Employment Practices Commission's failure to conduct a hearing within the time frame contemplated by Illinois law was found by the Illinois Supreme Court to extinguish his cause of action for employment discrimination. The Court noted that

Justice Jackson, writing for the Court in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 94 L.Ed. 865, 70 S.Ct. 652 (1950), observed: "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* at 313, 94 L.Ed. 865, 70 S.Ct. 652 [656–57].

*Logan,* 455 U.S. at 428, 102 S.Ct. at 1153–54. The *Logan* Court rejected an argument by the defendants that under *Parratt,* the plaintiffs' remedy lay in state tort law.

This argument misses *Parratt's* point. In *Parratt,* the Court emphasized that it was dealing with "a tortious loss of ... property as a result of a random and unauthorized act by a state employee ... not a result of some established state procedure." 451 U.S. at 541, 68 L.Ed.2d 420, 101 S.Ct. 1908 [1916]. Here, in contrast, it is the state system itself that destroys a complainant's property interest, by operation of law, whenever the Commission fails to convene a timely conference—whether the Commission's action is taken through negligence, maliciousness, or otherwise. *Parratt* was not designed to reach such a situation. *See id.* at 545, 68 L.Ed.2d 420, 101 S.Ct. 1908 (second concurring opinion). Unlike the complainant in *Parratt, Logan* is challenging not the Commission's error, but the "established state procedure" that destroys his entitlement without according him proper procedural safeguards.

In any event, the Court's decisions suggest that, absent "the necessity of quick action by the State or the impracticality of providing any predeprivation process," a post-deprivation hearing here would be constitutionally inadequate. *Parratt,* 451 U.S. at 539, 68 L.Ed.2d 420,

101 S.Ct. 1908 [1915]. *See Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. [1] at 19–20, 56 L.Ed.2d 30, 98 S.Ct. 1554 [1565–66]; *Board of Regents v. Roth,* 408 U.S. [564] at 570, n. 7, 33 L.Ed.2d 548, 92 S.Ct. 2701 [2705]; *Bell v. Burson,* 402 U.S. [535] at 542, 29 L.Ed.2d 90, 91 S.Ct. 1586 [1591]; *Boddie v. Connecticut,* 401 U.S. [371] at 379, 28 L.Ed.2d 113, 91 S.Ct. 780 [787]. *Cf. Barry v. Barchi,* 443 U.S. [55] at 64–65, 61 L.Ed.2d 365, 99 S.Ct. 2642 [2649] (post-termination hearing where the decision to terminate was based on a reliable pretermination finding); *Mathews v. Eldridge,* 424 U.S. [319] at 343–347, 47 L.Ed.2d 18, 96 S.Ct. 893 [907–09] (same).

*Logan,* 455 U.S. at 435–36, 102 S.Ct. at 1157–58. The Court was particularly wary of reliance on postdeprivation remedies where

the State's only post-termination process comes in the form of an independent tort action. Seeking redress through a tort suit is apt to be a lengthy and speculative process, which in a situation such as this will never make the complainant entirely whole, the Illinois Court of Claims Act does not provide for reinstatement—as the appellee conceded at oral argument, Tr. of Oral Arg. 39—and even a successful suit will not vindicate entirely Logan's right to be free from discriminatory treatment.

*Id.* at 436–37, 102 S.Ct. at 1158–59.

### IV.

Applying these principles to the case at bar, it is clear that, if the allegations in the complaint are true,[1] notice and the opportunity for a hearing were required prior to the destruction of the Yates' house. In fact, the state statutory procedure, upon which the City of Charlotte based its authority to enact the ordinance in question, specifically required a predeprivation hearing. *See* N.C.Gen.Stat. § 160A–443(2), (3) (1982).

This case does not involve "the necessity for quick action by the State or the impracticability of providing any predeprivation process." *Parratt,* 451 U.S. at 539, 101 S.Ct. at 1915. *See also Logan,* 455 U.S. at 436, 102 S.Ct. at 1158. On the contrary, the City of Charlotte in fact held a hearing to determine the propriety of demolishing the Yates' house. If, as plaintiffs allege, the City's failure to notify them of the hearing was pursuant to city policy or custom, then the deprivation without notice and the opportunity to be heard violated due process of law. *See Logan,* 445 U.S. at 436, 102 S.Ct. at 1158. The fact that the city and its agents may have violated state law and city regulations will not vitiate the plaintiffs' cause of action if it was city policy or custom to do so. *Accord Logan,* 455 U.S. at 436, 102 S.Ct. at 1158. Consequently, the plaintiffs in this case, as in *Logan,* need not allege that no adequate state law postdeprivation remedy exists in order to state a cause of action under § 1983.

The majority accepts the defendants' argument that a cause of action for inverse condemnation under North Carolina law is adequate to redress the Yates for the allegedly unlawful taking. *See* N.C.Gen.Stat. § 160A–445 (1982). This law provides the tort-like remedy of just compensation for the fair market value of property wrongly taken by a municipality. As was true in *Logan,* "seeking redress through a tort suit is apt to be a lengthy and speculative process, which in a situation such as this one will never make the complainant entirely whole." *Logan,* 455 U.S. at 436–37, 102 S.Ct. at 1158–59. In *Logan,* a tort remedy might have compensated the plaintiff for lost wages, but it would not have given him his job back.

In this case, North Carolina law provides for reimbursement for the value of the house. It obviously cannot bring the house back. When the house was destroyed without notice and an opportunity to be heard,

---

1. It must be remembered that we are dealing with a motion to dismiss the plaintiffs' complaint and, therefore, we must read the allega-

tions therein in the light most favorable to the pleader.

it is not sufficient to suggest that the owners, who might have successfully challenged the "unfitness" charge or elected to restore the structure, as the law permitted them to do, have a suitable or adequate remedy when they receive "just compensation" for their demolished building. In the usual condemnation case, the right to take the property is rarely in issue except when there is a question of whether the taking is for a public purpose. Here, on the other hand, the right to demolish can be exercised only if the structure is in fact unfit for human habitation *and* the owner fails to exercise his right to restore it to habitable condition.

A predeprivation hearing after appropriate notice is the only possible way in which the owner of a building alleged to be unfit for human habitation can adequately protect his interest. Under the ordinance he may elect to contest the unfit characterization of the structure, or he can, by making repairs, save his property from destruction. Hence, a postdeprivation hearing cannot possibly meet the owner's needs.

Further, as the Supreme Court recognized in *Fuentes*, part of the harm to the plaintiffs is the unlawful taking itself. "[N]o later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred." *Fuentes*, 407 U.S. at 82, 92 S.Ct. at 1995. Finally, a postdeprivation hearing and damage award will not suffice to further the purpose of due process of ensuring fairness in government procedures. *Id.* at 80–81, 92 S.Ct. at 1994. Consequently, even if a remedy exists under North Carolina law which could compensate the plaintiffs for the value of their house, such a postdeprivation remedy is not adequate to satisfy the requirements of due process.

For these reasons, I would affirm the ruling of the district court denying the defendants' motion to dismiss for failure to state a claim upon which relief could be granted.