**Melvin MORRIS, III, Plaintiff,**

v.

**Daniel E. McKEEVER, et al.,
Defendants.**

**Civ. A. No. 86–0354–R.**

United States District Court,
W.D. Virginia, Roanoke Division.

March 10, 1987.
As Corrected April 20, 1987.

Randolph D. Eley, Jr., Gilmer, Sadler, Ingram, Sutherland & Hutton, Pulaski, Va., for plaintiff.

William P. Wallace, Woods, Rogers & Hazlegrove, Roanoke, Va., for defendants.

MEMORANDUM OPINION

TURK, Chief Judge.

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights to procedural due process when they dismissed him from the police department of the Town of Pulaski, Virginia. The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The court finds that the plaintiff has failed to allege a procedural due process violation and therefore grants summary judgment in favor of the defendant.

## BACKGROUND

Like so many cases brought under section 1983, this lawsuit arises out of an incident of alleged police misconduct. *See, e.g., Street v. Cherba,* 662 F.2d 1037 (4th Cir.1981). It is unique, however, in that it is the police officer, not the victim, who seeks relief under the civil rights laws.

On June 23, 1985 · the plaintiff, Melvin Morris, III, a police officer in the Town of Pulaski, Virginia arrested James Stewart, Sr. for public drunkenness. Stewart resisted arrest and a scuffle ensued. From the time Morris tried to place Stewart into a patrol car until the time Morris brought Stewart in front of the magistrate, there was repeated physical contact between Morris and Stewart. During the course of his attempts to subdue Stewart, Morris maced Stewart, slammed his face forward onto the trunk of the patrol car while handcuffed, and kicked Stewart in the solar plexus while he lay on the floor. At one time during the struggle, Stewart bit Morris on the chest. As a result of the day's events, Stewart was charged and convicted for public drunkenness, malicious wounding and resisting arrest.

On June 28, 1985 Stewart filed a complaint with the Pulaski Police Department charging Morris with police brutality. The Chief of Police, defendant Edgar Joe Williams, assigned Lieutenant Stephen Gilbert Earhart to investigate Stewarts' complaint.

Earhart's investigation included interviews with all of the principal participants in the beating incident including Officer Morris, who had a full opportunity to provide his version of the incident.

Chief Williams received Earhart's report around July 17, 1985. Upon reviewing the results of Earhart's investigation, Williams concluded that Morris used excessive force in arresting Stewart and that Morris' misconduct warranted dismissal from the police force.

Pursuant to Pulaski town policy, Williams transmitted the text of the Morris investigation to the Town Manager, defendant Daniel E. McKeever. McKeever reviewed the report and also concluded that Morris acted excessively and unprofessionally.

On July 30, 1985 Williams informed Morris that he was being terminated immediately. Simultaneously, Williams provided Morris with a list of 13 violations of the Pulaski Police Department Rules and Regulations committed by Officer Morris. Morris had previously received no written statement of the charges, or of the possible disciplinary action that could be taken against him. Such prior written notification is required by The Virginia Law Enforcement Officer's Procedural Guarantees. *Va. Code* §§ 2.1–116.1 et seq., 116.4.

Morris then initiated a grievance procedure pursuant to the "Grievance Policy and Procedure" which covers all employees of the Town of Pulaski. He opted to follow the town procedure in lieu of the appeal hearing procedure that the Virginia Code provides for law enforcement officers. *Va. Code* § 2.1–116.5. At Step 2 of the grievance process Chief Williams affirmed his previous decision to terminate Morris and the reasons for doing so. At Step 3, Town Manager McKeever also affirmed his previous conclusions concerning Morris.

Step 4 in the Pulaski grievance procedure is a review of the case by a panel composed of three Pulaski residents. The panel in Morris' case held a hearing on December 9, 1985. On December 17, 1985 it issued a written opinion reversing the decision of Williams and McKeever. It concluded that Morris had not used excessive force in subduing Stewart and ordered that Morris be reinstated with full back pay, seniority and benefits. In the panel's view, the Pulaski Police Department had failed to give Morris written pre-dismissal notification as required by *Va. Code* 2.1–116.4, had failed to follow the Pulaski Police Manual, and had failed to interview Morris' immediate supervisor during the investigation.

After he was reinstated with full back pay, seniority, and benefits, Officer Morris filed this suit charging that Chief of Police Williams, Town Manager McKeever and the Town of Pulaski denied his right to procedural due process under the Four-

teenth amendment when they failed to give him pre-termination written notice of the charges against him and neglected to give him a pre-termination hearing as required by *Va. Code* § 2.1–116.4.

All the defendants have filed motions for summary judgment with supporting affidavits. They contend that they did not deny Morris procedural due process because he had actual notice of the charges against him and had an opportunity to respond during the investigation. Further, they argue that Morris has no valid procedural due process claim because the grievance procedure provided him with a meaningful post-deprivation remedy. Finally, the individual defendants assert that even if Morris could substantiate a claim, he could not recover compensatory or punitive damages from them because they are public officials who acted in their official capacity and in good faith.

The court held a hearing on January 12, 1987 during which all parties presented their arguments. Following the hearing the court received a brief *amicus curiae* from the Virginia State Lodge of the Fraternal Order of Police which opposes the defendants' position on the effect of a post-deprivation remedy on a procedural due process claim.

## DISCUSSION

To survive a motion for summary judgment, a plaintiff must establish that there is a genuine issue of material fact. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538. A genuine issue of material fact exists only when the record taken as a whole could lead a rational trier of fact to find for the plaintiff; otherwise the court may grant summary judgment to the de-· fendant. *Id.*

Here there is no material factual dispute. All parties agree as to the facts and circumstances of the Morris investigation and the subsequent termination—that he received no prior written notice and that he had no formal hearing prior to termination. While the parties disagree as to the details of the confrontation between Morris and Stewart, these facts are irrelevant so far as the procedural sufficiency of Morris' termination is concerned. *See Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The only issue that the parties contest is whether the investigation and termination fell within or without the parameters of procedural due process, a legal issue that the court can resolve at the summary judgment stage.

While the parties present several arguments concerning the alleged denial of Morris' right to pretermination procedural due process, the court views as the central issue here whether the availability of the post-termination grievance procedure prevents the court from exercising jurisdiction over the plaintiff's procedural due process claim. The Supreme Court first considered the effect of such post-deprivation remedies in the case of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). That case, and its progeny, will be the focus of the court's inquiry here.[1]

## THE EFFECT OF POST–DEPRIVATION REMEDIES ON MORRIS' PROCEDURAL DUE PROCESS CLAIMS.

■ "[A] government official's random and unauthorized act ... which causes the loss of private property is not a violation of procedural due process when the state provides a meaningful post-deprivation reme-

---

1. Both the plaintiff and *amicus curiae* contend that *Parratt* is inapplicable here because the Supreme Court overruled it in the recent *Daniels* decision. *See Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). *Daniels* did overrule *Parratt's* holding that negligence by a state official can satisfy the allegation of a procedural due process violation. *Id.*, 106 S.Ct. at 665 "We ... overrule *Parratt* to the extent that

it states that mere lack of due care by a state official may 'deprive' an individual of life, liberty, or property under the Fourteenth Amendment". To the extent that it concerns the effect of post-deprivation remedies, however, *Parratt* remains as good law. *See McIntyre v. Portee*, 784 F.2d 566, 567 (4th Cir.1986) (relying on *Parratt's* post-deprivation remedy holding subsequent to *Daniels*).

dy." *Yates v. Jamison,* 782 F.2d 1182, 1184 (4th Cir.1986). So long as the unauthorized wrongful act is not sanctioned by any established state procedure and the state law provides a realistic means for the plaintiff to be made whole, there is no denial of procedural due process regardless of whether the defendant's actions are negligent or intentional. *Palmer v. Hudson,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984) (intentional acts); *Parratt,* 451 U.S. at 545, 101 S.Ct. at 1918 (unintentional acts).

The rationale behind this rule is that the wrongful state action is considered to be incomplete until the termination of the state's post-deprivation remedy. *Yates, supra,* 782 F.2d at 1184. A suit based on a wrongful act that ignores the existence of a post-deprivation remedy is, in effect, one that considers only partial or unfinished state action.

■ However, the availability of a meaningful post-deprivation remedy bars a procedural due process claim only when the alleged state action is a negligent act or a random intentional act. When the plaintiff's loss is caused by an exercise of established state procedure, for example, by the enforcement of a statute, then even the most meaningful post-deprivation remedial process will not prevent the allegation of a procedural due process violation. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435–36, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1982). Thus, prior to determining whether Morris had available a meaningful post-deprivation remedy, the court must examine whether the procedural deficiencies in his termination were random and unauthorized or the result of an established practice.

a. Defendants' Actions in Terminating Morris Were Not Established State Procedures.

The established state procedure for handling the termination of police officers is set out in the Law-Enforcement Officers' Procedural Guarantees. *Va.Code* § 2.1–116.4. Morris has alleged that the defendants stripped him of due process when they failed to follow that procedure. He does not allege that the procedure itself violates due process guarantees. The crux of his complaint, therefore, is the defendants' departure from state procedure or their error in implementing it—exactly the type of random wrongful action that courts addressed in *Parratt* and its progeny and which can be cured by the availability of a meaningful post-deprivation remedy. *See Parratt, supra,* 451 U.S. at 541, 101 S.Ct. at 1916; *see also Hudson, supra,* 468 U.S. at 517, 104 S.Ct. at 3195; *Logan, supra,* 455 U.S. at 436, 102 S.Ct. at 1158; *Yates, supra,* 782 F.2d at 1184.

b. The State Afforded Morris A Meaningful Post-Deprivation Remedy.

■ The court can imagine no post-deprivation remedy more meaningful than the grievance procedure that was available to Morris and of which he took advantage. It was relatively swift in that it was completed within three and one-half months of Morris' termination. Its remedial powers were broad, and in the end, were exercised fully to Morris' benefit. By granting Morris' full back pay, seniority and benefits, the grievance panel restored Officer Morris to the complete status that he enjoyed prior to his termination. Even conceding that Morris' termination was wrongful, the presence of such a comprehensive post-termination grievance procedure prevents a claim that the termination violated his rights of procedural due process.

CONCLUSION

Morris' termination was the result of an error in following state procedure but was followed by a post-deprivation grievance process that resulted in full restoration of his job, backpay and his benefits. While his termination was technically wrongful, the court cannot consider it alone as a complete incident of improper state action. Here the state action ended much later, at Step 4 of the grievance procedure when Morris was made whole. Because the procedural deficiencies of his termination were cured by a meaningful post-deprivation remedy, Morris is barred from asserting a

violation of procedural due process. *Yates, supra,* 782 F.2d at 1185. In light of this holding it is unnecessary for the court to consider the other arguments presented by the parties. Summary judgment will be entered in favor of the defendants.