**Ralph Rodney FIELDS, Plaintiff–Appellant,**

v.

**Joseph T. DURHAM, Individually and as President of Community College of Baltimore; Community College of Baltimore; Mayor and City Council of Baltimore City; James S. Jeffers, Chairman of the Board of Trustees Community College of Baltimore: the Board of Trustees Community College of Baltimore, Defendants–Appellees.**

**No. 88–1564.**

United States Court of Appeals, Fourth Circuit.

Argued July 12, 1988.

Decided Sept. 13, 1988.

Barry Lee Steelman (Daniel S. Katz, Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A., Baltimore, Md., on brief), for plaintiff-appellant.

John Spencer Wood, Chief Sol. (Neal M. Janey, City Sol., Laurice D. Royal, Asst. Sol., Baltimore, Md., on brief), for defendants-appellees.

Before CHAPMAN, WILKINSON and WILKINS, Circuit Judges.

WILKINSON, Circuit Judge:

On June 27, 1986, Ralph Fields was terminated from his position as Dean of Faculty and Provost at the Community College of Baltimore by the College's newly appointed president, Joseph Durham. The Board of Trustees approved Field's termination after a hearing held on August 12, 1986. Fields subsequently filed suit against Durham, the College, its Trustees, and the Mayor and City Council of Baltimore under 42 U.S.C. § 1983. He alleged that he had been denied due process by defendants' failure to follow the procedures required by the bylaws of the College and the terms of his employment agreement in connection with his discharge.

Plaintiff has, at most, alleged a random and unauthorized failure of College officials to follow state procedures in connection with his termination. Due process is, therefore, satisfied by the meaningful post-deprivation remedies available under state law. Because plaintiff has failed to state a claim under § 1983, we affirm the district court's grant of summary judgment for defendants on that count. We affirm also the dismissal of plaintiff's state claims without prejudice to his right to pursue those claims in state court.

I.

Ralph Fields began employment with the Community College of Baltimore in 1967 and received faculty tenure in 1970. Fields was promoted to the administrative position of Dean of Faculty/Provost in 1978. The following year, in order to comply with its collective bargaining agreement with the union, the College issued "Conditions of Appointment for Administrators and Non–Instructional Personnel," which precluded an individual from holding an administrative title concurrently with professorial rank and set forth procedures for termination of administrative personnel. In 1984, Fields was reappointed to another three year term as Dean of Faculty/Provost.

In September 1985, in response to administrative and academic problems at the College, the Mayor of Baltimore appointed Joseph Durham interim president. Durham evaluated Fields and other top staff in June, 1986. Durham had earlier notified Fields of deficiencies in his performance. On June 27, 1986, Fields received an unsatisfactory evaluation and was informed that his employment was being terminated. Fields was told of his right to appeal his

termination to the President's Cabinet. Feeling that an appeal to the Cabinet would be meaningless, Fields waived that appeal and sought direct review of the termination decision by the Board of Trustees. After a hearing on August 12, 1986, the Board unanimously affirmed his discharge.

Fields filed suit in the United States District Court for the District of Maryland under 42 U.S.C. § 1983. He alleged that the College failed to provide him adequate notice, documentation of the specific reasons for his discharge, and a fair pretermination hearing before an impartial decisionmaker as required by the policies and bylaws of the College and the conditions of his employment. In addition to a denial of his right to due process, Fields also alleged pendent state law claims for breach of contract, civil conspiracy, tortious interference with contract, and wrongful discharge. The district court granted defendants' motion for summary judgment on the § 1983 claim and declined jurisdiction over the pendent state law claims. Plaintiff appeals.

## II.

In *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Supreme Court held that when the state deprives an individual of a property interest as the result of the unauthorized failure of its agents to follow state procedure, due process is satisfied by the availability of meaningful postdeprivation process. *Id.* at 543–44, 101 S.Ct. at 1917. The Court extended this holding to deprivations by intentional but unauthorized acts of state employees in *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984). The Court distinguished between deprivations caused by the random and unauthorized acts of state officials and those occasioned by conduct pursuant to established state procedure. *Id.* at 532–33, 104 S.Ct. at 3203. In the former due process is satisfied by the availability of meaningful postdeprivation remedies; in the latter, under *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed. 2d 265 (1982), it is not.

We conclude that this case is controlled by the holdings of *Parratt* and *Hudson*. Defendants' alleged failure to follow established state procedure in connection with Fields' termination was, even if intentional, a random and isolated occurrence not authorized by the state and, in fact, contrary to its procedures. If Fields was deprived of a fair and impartial hearing prior to his termination, due process is satisfied by the availability of adequate state law remedies which he may pursue in state court. The fact that high-ranking officials were involved does not by itself make *Parratt/Hudson* inapplicable. *Holloway v. Walker*, 790 F.2d 1170, 1173–74 (5th Cir. 1986), *cert. denied*, 479 U.S. 984, 107 S.Ct. 571, 93 L.Ed.2d 576 (1986). Fields has thus failed to state a claim cognizable under § 1983.

## A.

We note at the outset that the fact that a predeprivation hearing may be practicable does not invariably render *Parratt/Hudson* inapplicable. In fact, the emphasis in those cases on departures from established state procedures would appear to presuppose that the very subject addressed by the established procedures would often be predeprivation process. Similarly, in *Yates v. Jamison*, 782 F.2d 1182 (4th Cir.1985), plaintiffs alleged that the City of Charlotte had destroyed a house they owned without notice and in violation of the due process clause of the Fourteenth Amendment. Neither state nor city procedures authorized the demolition of a dwelling without a predeprivation hearing. The crux of the plaintiffs' complaint, we noted, was their allegation that their house was destroyed without notice only because the defendants violated established state procedure. Plaintiffs did not challenge the operation of the North Carolina statute or the Charlotte ordinances, both of which required notice and a hearing *prior* to the demolition of the dwelling.

In finding *Parratt* applicable, despite the fact that a predeprivation hearing was practicable, we held that *Parratt* "requires the dismissal of plaintiffs' complaint be-

cause they possess an adequate and meaningful postdeprivation remedy in the form of an action for inverse condemnation in state court." *Yates*, 782 F.2d at 1185.

Here too the authorized state procedure calls for a pretermination hearing. In fact, such a hearing was held. After receiving warnings of deficiencies and a notice of termination, Fields waived his right to a hearing before the President's Cabinet and brought his appeal directly to the Board of Trustees. At the hearing before the Board, Fields was represented by counsel, produced witnesses on his behalf, presented numerous exhibits, and had the opportunity to testify and cross-examine. The Board unanimously affirmed Fields' termination for cause on August 15, 1986.

Fields does not argue that he was not provided with this process. Nor does he contend that the termination procedures set forth in the conditions of his employment or the College's evaluation procedures or bylaws are constitutionally inadequate. Rather, he alleges that because he personally received inadequate notice, an untimely evaluation, insufficient information as to the reasons for his termination, and the like, the process with which he was provided failed to conform with that required by the College's rules and regulations and his employment agreement. Clearly, as the district court observed, the gravamen of all the claims asserted by plaintiff is that the defendants deprived him of due process by failing to conform to their own established procedures.

Such claims would appear to place plaintiff squarely within the holding of *Parratt*. Plaintiff contends, however, that defendants' actions resulting in his termination without adequate process were not random and unauthorized but were, rather, the result of a policy decision by high ranking college officials amounting to established state procedure.

We do not agree. Allegedly inadequate predeprivation proceedings do not violate due process merely because they were conducted under color of state law; they must also have been authorized by the state. *See Hudson*, 468 U.S. at 532, 104 S.Ct. at

3203; *Yates v. Jamison*, 782 F.2d 1182, 1184–85 (4th Cir.1986). The state neither explicitly nor implicitly authorized the allegedly deficient process at issue here. The process authorized by the state was that set forth in the College's rules and regulations and in the terms of Fields' employment agreement. Fields does not contend that these explicit procedures were constitutionally deficient, and there is nothing to suggest that the state implicitly authorized deviations from them.

Fields has also not alleged that the College engaged in a pattern or practice of providing inadequate pretermination process. Rather, he claims that in this single instance, high ranking College officials, in contravention of established state procedure, provided him with a constitutionally deficient hearing to "squeeze" him out of the institution. While there is some suggestion that procedures for the termination of administrators are inadequate, the suggestion is wholly conclusory, made without reference to any other instance of administrator termination and indeed made without discussion of any alleged state policy or custom with respect to administrative personnel. At issue, rather, is exactly the type of random and unauthorized conduct of state employees that the Supreme Court has recognized the state is powerless to predict or control and which can, therefore, consistent with due process, be redressed by meaningful postdeprivation remedies. *Hudson*, 468 U.S. at 517 and 532, 104 S.Ct. at 3203; *see Holloway*, 790 F.2d at 1173.

We agree with the Fifth Circuit that such isolated instances of misconduct become no less random or unauthorized simply because they were taken by high ranking officials. *See Holloway*, 790 F.2d at 1173–74. *But see Patterson v. Coughlin*, 761 F.2d 886, 892 (2d Cir.1985), *cert. denied*, 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986). In *Holloway*, the Fifth Circuit made clear that even high-ranking state employees might engage in random and unauthorized departures from established state procedures. *Parratt/Hudson*, it reasoned, was not on that account to be confined "to the actions of low level state

employees who lack the power to grant a hearing." *Holloway*, 790 F.2d at 1173. So long as the state, "by procedure and in ordinary practice, does in fact provide the plaintiff with due process, no violation of the guarantee contained in the national Constitution occurs merely because the official who randomly deprives him of liberty or property without the hearing required by state law has the power to grant such a hearing." *Id.*

We think the *Holloway* approach applies to college trustees who must work within the strictures of the contracts and bylaws of their institution and the larger body of state law pursuant to which these rules are promulgated. The trustees, no less than the state judge in *Holloway*, have the power to grant a hearing and to render a final decision on the discharge. They are also capable of unforeseeable departures from their legal obligations under state law for which, absent immunities which are not asserted here, they may be brought to account in state court. High-ranking officials are bound by the rule of law and their departures therefrom, no less than those of others, are subject to the *Parratt* holding. The theory of *Parratt*—that the states possess the primary opportunity to redress unauthorized deprivations of property interests—applies to this alleged deprivation in full force.

Admittedly, our analysis here presents but one approach to due process litigation. This circuit has adopted several approaches which address the legal complexity and factual variety of individual cases.

In *Davis v. Pak*, 856 F.2d 648 (4th Cir. 1988), for example, we held, consistent with *Hagans v. Lavine*, 415 U.S. 528, 536, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577 (1974), that where a federal claim is insubstantial, federal jurisdiction is improper. Such an approach applies when federal jurisdiction is prefaced on an insubstantial federal claim or where the proffered claim is truly frivolous.

In *Siu v. Johnson*, 748 F.2d 238 (4th Cir.1984), we did not rely upon *Parratt* because there was not plainly brought into issue an isolated deviation from authorized state procedures as alleged in the instant case. We asked simply whether the actions or procedures of the state sufficed to provide plaintiffs with procedural due process.

Finally, in the instant case, as in *Yates*, when the state deprives an individual of a property interest as the result of the unauthorized failure of its agents to follow state procedure, we must look to see if a meaningful postdeprivation process is available. Under any of the above approaches, a grant of summary judgment for defendants or a motion to dismiss still affords plaintiff the critical option of bringing his pendent claims before state courts.

### B.

Fields has available under state law adequate postdeprivation remedies to redress the defendants' alleged failure to provide him with pretermination process consistent with the College's rules and regulations and the terms of his employment agreement. He may bring in state court his claims for breach of contract, wrongful discharge, civil conspiracy, and tortious interference with contract. The fact that the relief available under such state causes of action may not be coextensive with that available under § 1983 does not render these state law remedies inadequate. *Parratt*, 451 U.S. at 543–44, 101 S.Ct. at 1917.

Not only are state law claims principally involved; so also is the proper application of a state institution's termination procedures. Where such claims are presented in the context of a single, random, and unauthorized failure of state officials to follow established procedure, an action under § 1983 will not lie. *Parratt* leaves to state law and to state courts the supervision of state officials and state institutions so long as authorized predeprivation procedures comport with due process and adequate postdeprivation remedies afford those affected by unauthorized departures the process to which the Fourteenth Amendment entitles them.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.