**Maria ESQUIVEL, Plaintiff,**

v.

**The VILLAGE OF McCULLOM LAKE, Richard C. Kelly, Defendants.**

**No. 85 C 20164.**

United States District Court, N.D. Illinois, W.D.

April 28, 1986.

---

Kristine Poplawski, Farmworker Justice Fund, Washington, D.C., Vincent H. Beckman, Illinois Migrant Legal Assistance Pro-´ ject of the Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiff.

William C. Barasha, Kurnik & Cipolla, Arlington Heights, Ill., Richard Kelly, Kelly and McGlory, Crystal Lake, Ill., Joseph Condon, Condon and Zopp, Crystal Lake, Ill., for defendants.

## ORDER

ROSZKOWSKI, District Judge.

The action now comes before the court on the motion of both sides for summary judgment and on the defendants' alternative motion for dismissal. On the basis of the briefs and for the reasons set out below the court denies the cross motions for summary judgment and denies the defendants' motion for dismissal.

## BACKGROUND

This action involves a house that stood at 5305 Orchard Drive in the Village of McCullom Lake until the Village secured and executed an order of demolition for the house. The plaintiff contends that the Village secured the demolition order without providing her with due process of law. The plaintiff also contends that the Village acted arbitrarily and capriciously by demanding that the plaintiff make repairs on her house but thwarting her every effort to do so. The plaintiff also alleges that the Village violated her fourth amendment rights by conducting a warrantless search of the house.

On January 12, 1983 the Village of McCullom Lake demolished the plaintiff's house pursuant to an order of the Circuit Court of McHenry County. The Village demolished the house without the plaintiff's knowledge.

The Village of McCullom Lake is incorporated under the laws of Illinois. The Village has approximately thirteen hundred residents. Six trustees and a president comprise the government. Each trustee is separately responsible for certain Village departments, for example, Building and Zoning, Health and Welfare, or Finance. The trustees have independent authority to

make decisions within their zones of responsibility. The Board of Trustees meets twice monthly at which time the trustees report their activities to the full Board.

The actions that the Village took began in May of 1982 when Roland Hughes, the Village Trustee in charge of Building and Zoning, placed a "red tag" on the plaintiff's house. The tag asserted a violation of Village ordinances and a box next to "sewer and water" was checked. The tag instructed the owner to call the Building and Zoning Department immediately and gave the phone number and Hughes's name. The tag did not state that the Village had condemned the house or had declared the house uninhabitable. The tag was the only document that the Village Board served on the plaintiff.

On June 8, 1982, the Village directed its attorney, the defendant Kelly, to instigate a demolition action by a vote of the Village Board of Trustees on a motion by Trustee Roland Hughes. The Village gave no notice to the plaintiff that it would at the June 8th meeting consider seeking demolition of her house. The Village also did not notify her after its vote that it had decided to seek demolition of her house.

In October, the Village Attorney, Kelly, sent a notice to the house stating the plaintiff must either repair her house or an order would issue for its demolition or repair. The notice did not have a case number as Kelly had not yet filed an action. The Village president had told Kelly that although the house was vacant mail was received at the address. The defendant Kelly sent the document by certified and regular mail. Although the post office returned the certified letter unclaimed to Kelly on October 10, 1982, Kelly continued to believe that mail was received at the house. Kelly also tacked a copy of the notice to the door of the house on September 21, 1982. The plaintiff Esquivel neither saw the notice on the door nor received a copy of the notice by mail.

When the defendant Kelly received the registered letter back from the post office, he inquired from Trustee Hughes whether Hughes knew where the plaintiff resided. Although Hughes had learned that the plaintiff lived with her daughter and had the address and phone number in his files Hughes told Kelly that Hughes knew nothing.

In August or September of 1982 the Village Board learned that that the plaintiff had received a weatherization grant from the county to repair her windows. Members of the Village Board caused the county to withdraw the grant until the plaintiff obtained a building permit. The plaintiff inquired of Trustee Hughes about obtaining a permit in September of 1982 in order to improve her house. According to the minutes of the September 14th Board meeting the Village was aware of her attempts to repair her house.

The defendant Kelly finally sought the petition for demolition in the circuit court. He knew that the plaintiff had made several attempts to repair her house and he still believed that she received mail there. The defendant Kelly never asked the clerk of the court to issue a summons to the plaintiff to appear in court to respond to the petition.[1] Kelly made no attempt to serve either the petition or a summons on the plaintiff. The only notice that the Village sent was to Chicago Title and Trust, which the Village believed to be a lien holder. Chicago Title and Trust informed the Village that it had no interest in the land or building.

On November 8, 1982, Richard Kelly appeared in the Circuit Court of McHenry County and requested an order to demolish the plaintiff's house. No one appeared in opposition. The defendant did not apprise the judge of the fact that the defendant

1. The Illinois Code of Civil Procedure requires personal service of process unless a statute provides otherwise or unless after a diligent search the petitioner cannot locate the respondent. Code of Civil Procedure, Ill.Rev.Stat., ch. 110, §§ 2–203, 2–206 (1985). The section of the Illinois Municipal Code dealing with demolition of buildings does not provide for a variance from the notice proceedings. Municipal Code, Ill. Rev.Stat. ch. 24, § 11–31–1 (1985).

had made no attempt to serve the plaintiff. The defendant represented the condition of the house in accordance with the Village's opinion. He also represented to the court that the house was abandoned. The circuit court issued the demolition order the same day. Neither the defendant Kelly nor the defendant Village informed the plaintiff that it held a demolition order outstanding against her house. Two months later, on January 12, 1983, the Village executed the demolition order.

## DISCUSSION

Both parties move for summary judgment on the issue of the defendant's liability for demolishing the plaintiff's house without due process of law and for entering the plaintiff's house without a warrant. The defendants also move for summary judgment on all other causes of action. Federal Rule of Civil Procedure 56(c) requires the court to grant summary judgment when all of the pleadings, affidavits, interrogatories, and depositions show that there is no issue of material fact and that the defendants are entitled to judgment as a matter of law. *Backes v. Valspar*, 783 F.2d 77 (7th Cir.1986).

### A. The Demolition of the House.

The central facts in the case involve the house at 5305 Orchard Drive. Both parties point to deposition evidence of the house's condition. By all reports the house was no palace.

The defendants proffer what they suggest to be uncontested facts that the house was dilapidated beyond repair. For example the testimony of Roland Hughes states that the roof was rotted, that the windows were out, and that the floor was rotted and unsafe, and that the house had no sewerage.

Richard Miller, the contractor who executed the demolition order for the city stated that the house was in such a condition that he was afraid to walk in it. He also stated that there were holes in the sagging roof and ceiling such that he could see daylight from inside the house. He found no plumbing in the house. Miller stated that he would not have razed the house if it had been structurally sound. The defendants report at length a number of other depositions that make similar assertions.

In 1982 the plaintiff Ms. Esquivel asked James Atchison to give her an opinion on renovating the house. According to Atchison's deposition he found the house to be square and true with no sagging or leaning. He stated that the one bad rafter in the house was correctable by placing another alongside of it. Atchison noted a leaky roof over the back porch. But Atchison found a toilet, bathtub, and sink in the house and thought the house very clean for a vacant house.

The plaintiff also notes that the county health officials visited the house in June of 1982 and found no health code violations at that time. The defendants apparently believe that the weight of their deposition evidence establishes an undisputable fact. It is not for the court to weigh evidence. The court merely views the evidence to determine if *any* issue of material fact exists. The clear import of the depositions is that issues of fact remain concerning the house. A question remains whether the issues are material.

The defendants proffer a number of cases in support of their contention that with respect to the demolition of her house the plaintiff received from the defendant Village all of the process that she was due. The contention places the court squarely in the midst of a hotly debated and highly confusing area of section 1983 law: when is a municipal entity liable for deprivations of due process involving its agents? After inquiring whether the Village's agent, Kelly, committed a due process violation at all, the court will canvass recent Supreme Court decisions to determine under what circumstances liability for such a violation will inure to the Village.

The Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), set out the fundamental considerations of due process:

First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and finally the Government's interest, including the function involved and the fiscal and administrative burdens that the addition of substitute procedural safeguards would entail.

*Id.* 335, 96 S.Ct. at 903. The defendants press a bold assertion that these factors weigh against giving to persons like the plaintiff a hearing before the demolitions of their houses.

With respect simply to the demolition hearing the defendants argue that the burden of following the statutorily outlined procedure for notice outweighs the benefits of giving a property owner the chance to give her side of the issue. The defendants point to the minor value of the house at issue and to the competence of their Building Inspector fairly to give a balanced representation to the court. Those contentions are absolutely contrary to the basis of due process. "The fundamental requisite of due process is an opportunity to be heard. [citation omitted] This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for [herself] whether to appear or default, acquiesce or contest." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313–14, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950); *see also Yates v. Jamison,* 782 F.2d 1182, 1185–91 (4th Cir.1986) (Ervin, J., dissenting) (exhaustive discussion of value of predeprivation process in very similar circumstances). The one possible basis for a demolition without notice, some exigency or danger, simply is not borne out by the facts.

### 1. The Defendant Kelly.

The court must carry the analysis out step by step in order to give proper attention to the many details in the labyrinth of section 1983 law. Therefore the court first turns its attention to the actions of the defendant Kelly.

According to the allegations and the undisputed facts, Kelly failed to give the plaintiff notice of the hearing in the Circuit Court of McHenry County. As the court has noted above, that failure contravenes the very basis of due process, the right to be heard.

*Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) does not bar the action against Kelly. The defendants contend that the existence of a postdeprivation remedy for inverse condemnation preempts a section 1983 action by providing postdeprivation due process. *Parratt,* however, had two requirements to satisfy due process. In addition to an adequate postdeprivation remedy, under *Parratt* a defendant must show that meaningful predeprivation process was impractical. *Parratt,* 451 U.S. at 539, 101 S.Ct. at 1914. As the Seventh Circuit has recently restated, "A postdeprivation remedy does not satisfy due process, however, if a predeprivation hearing is practical...." *Greco v. Guss,* 775 F.2d 161, 170 (7th Cir.1985). The controlling inquiry is whether predeprivation process was practical. *Id.* at 171.

Predeprivation process was clearly practical for the defendant Kelly. The facts do not support any claim that Kelly required quick action. The defendant Kelly even went to the length of seeing that Chicago Title and Trust, which did not even have an interest in the property, received proper notice. Yet he did not even attempt proper service on the plaintiff.

The court will not, however, enter summary judgment against Kelly. The Supreme Court has recently held that simple negligence will not violate the Constitution. *Daniels v. Williams,* —— U.S. ——, ——, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1985). A failure to comport with a fundamental aspect of due process appears reckless. The defendant, however, has not yet had a chance to respond to the issues as framed in this order.

### 2. The Defendant Village.

The Village asserts that the plaintiff's actions against it must fail on the basis of *Parratt v. Taylor* and *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). For different reasons both theories assert that the Village was not responsible for a due process violation.

As the court stated above, the proper analysis of *Parratt* does not reach the adequacy of postdeprivation process until it establishes the impracticality of predeprivation process. *Parratt,* 451 U.S. at 539, 101 S.Ct. at 1914; *Greco,* 775 F.2d at 170–71.

For example, the impracticality of predeprivation process in *Parratt* arose from the negligent action of a prison employee who lost the now-famous plastic model kit. The prison officials, unable to foretell the negligent action, could not reasonably have held any sort of predeprivation hearing to determine whether fairness would have allowed the employee to lose the plaintiff's hobby kit. The impracticality coupled with the existence of a postdeprivation remedy satisfied due process. *Id.* 451 U.S. at 543–44, 101 S.Ct. at 1916–17.

In the same manner the Supreme Court later held that the intentional actions of a prison (or municipal) employee would not subject the employer to liability under section 1983. *Hudson v. Palmer,* 468 U.S. 517, ——, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984). The employer can hardly expect its employees purposely to violate the employer's policies. Consequently, due process does not require a hearing to determine whether an employee ought purposely to violate the employer's policies and deprive someone of property. Again, however, both an impracticality of predeprivation process and the existence of adequate postdeprivation procedures were present.

When turned on the present case the inquiry of *Parratt* and *Hudson* asks whether the actions of the defendant Kelly were random and unauthorized. If Kelly acted unilaterally, the Village has not violated the plaintiff's due process rights. The Village could not have given the plaintiff predeprivation process if it had no knowledge of an impending deprivation. Such a hearing would be impractical within the meaning of *Parratt* and *Hudson.*

Certain deposition testimony, however, suggests that the Village may have known and sanctioned Kelly's action. Particularly, Hughes's failure to give Kelly the plaintiff's most recent address at least supports an inference of complicity or knowledge. More generally the plaintiff's testimony of ongoing harassment by various Village officials could support an inference of Village complicity. Therefore *Parratt* and *Hudson* do not support summary judgment for the defendant Village.

The defendants also style their theory in terms of *Monell.* The defendant Village asserts that given the undisputed facts the plaintiff has failed to establish that the demolition of the house was pursuant to a custom or policy of the Village. The plaintiff in the present case does not allege repeated instances of demolition. So the court must determine when isolated actions may constitute a municipal policy. *City of Oklahoma City v. Tuttle,* 471 U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality); *Pembaur v. City of Cincinnati,* —— U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality).[2]

In *Tuttle,* a city police officer had violated the rights of the plaintiff's decedent by fatally shooting the decedent. The officer had had no reason to suspect that the decedent was a felon or that the decedent was

---

**2.** The defendants have urged the court to follow the view of the Sixth Circuit as the better view that a single incident even if attributable to a person in a policymaking position, does not state a cause of action against a municipality. *Pembaur v. City of Cincinnati,* 746 F.2d 337 (6th Cir.1985), *rev'd,* —— U.S. ——, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality). Although the case was central to the defendants' argument neither side noted that the Supreme Court had granted certiorari or had heard oral argument. It is incumbent on the parties to apprise the court of the relevant case law. To date neither party has brought the decision to the court's attention.

armed. *Tuttle,* 105 S.Ct. at 2430 (plurality opinion). The trial judge had given the jury two theories on which the jury could find municipal liability: the jury could find based on testimony to this effect by the plaintiff's experts that the city had a grossly negligent custom or policy of giving its officers inadequate training, or the jury could infer a custom or policy from the outrageous circumstances of the decedent's death. *Id.* at 2431.

Justice Rehnquist, writing for the plurality noted that a "policy" of inadequate training implied a conscious and deliberate choice to train officers in a manner that would prove inadequate, a very difficult policy to prove. The Court reversed the circuit decision that upheld the trial court's instruction. A majority of the court, however, focused on the second instruction. The Court held that the alternate instructions improperly allowed the jury to impose liability based on a single violation perpetrated by a municipal employee far removed from policymaking. Such an isolated incident involving a low-level employee could not support an inference of a policy or custom behind the employee's action. *Id.* at 2436 (plurality opinion); *id.* at 2440 (Brennen, J., concurring).

As Justice Rehnquist's plurality opinion stated the purpose of *Monell* in requiring a custom or policy to hold a municipality liable was to require a fault-based determination as to the municipal entity and to avoid simple respondeat superior liability. *Id.* at 2433–34 (plurality opinion). It was therefore incumbent on the plaintiff to show that some policymaking official of the municipality took active steps to create or carry out a policy that violated the plaintiff's civil rights. *Id.* at 2436.

The Supreme Court revisited the issue in *Pembaur v. City of Cincinnati. Pembaur* involved an action taken by city police and county sheriffs at the direction of the county prosecutor that violated the plaintiff's constitutional rights. Justice Brennan, writing for the plurality, reviewed the Court's decisions that had involved actions by municipal authorities. *Pembaur,* ——

U.S. at —— – ——, 106 S.Ct. at 1297–98 (plurality opinion). The plurality identified the salient characteristic as the identity of the decisionmaker as a policymaker. *Id.* at ——, 106 S.Ct. at 1298 (comparing *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (liability when resolution of city council involved); *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (liability when action of city council involved) *with Tuttle* (no liability for unilateral action of police officer).

The plurality in *Pembaur* stated that municipal liability under section 1983 would obtain only when an official or officials responsible for establishing final policy with respect to the subject matter in question chose a deliberate course of action from among various possible courses of action. *Pembaur,* —— U.S. at ——, 106 S.Ct. at 1300. Responsibility for establishing final policy was a question of state law. *Id.*

Justice White, in a concurring opinion, suggested a narrower holding. His concurrence asserted that liability would not have attached if the city or county had had statutes or superseding policy that provided the proper fourth amendment protections. *Id.* at ——, 106 S.Ct. at 1302. (White, J., concurring). In that instance, aberrant actions, even by persons in policymaking positions, would not subject the governmental entity to liability. *Id.; see also id.* at ——, 106 S.Ct. at 1304 (O'Connor, J., concurring) (agreeing with opinion of Justice White).

Although after two recent attempts to the Supreme Court has not arrived at a controlling opinion in its analysis of what constitutes a municipal custom or policy, the import of the decisions is to limit the liability of municipalities to situations in which the municipality is in some respect at fault. The Seventh Circuit gives some further direction:

This predication of liability upon fault means that when an individual official breaks with official policy, and in doing so violates the constitutional rights of

another, then that official, and not the municipality whose policy he breached, should be made to bear the liability. Conversely, when an official performs his duties according to established policies or practices, but in doing so violates another's rights, then it is the municipal entity which established or perpetuated the practices, that should be liable.

*Powe v. City of Chicago,* 664 F.2d 639, 649 (7th Cir.1981). This court believes that the proper question is whether, under the present facts, the decision not to attempt to give the plaintiff notice of the circuit court hearing can be attributed to a Village policymaker.

As the court has already noted, certain deposition testimony could support an inference that Village Board members may have had knowledge of the defendant Kelly's actions. The same testimony could support an inference that one or more members of the Village Board directed Kelly to abbreviate the process due to the plaintiff. The court cannot grant summary judgment to the Village on the basis of *Tuttle* and *Pembaur.*

In determining whether the Village may be liable for demolishing the plaintiff's house the court must consider the recent case of *Yates v. Jamison,* 782 F.2d 1182 (4th Cir.1986). The facts of *Yates* are startlingly similar to the present facts. In *Yates,* the City Council of Charlotte, North Carolina adopted a local ordinance directing the Superintendent of Building Inspection to demolish the plaintiffs' house. The Superintendent and his agents proceeded to demolish the house without a notice to or a hearing for the plaintiffs who lived in another city. *Yates,* 782 F.2d at 1183.

North Carolina law and Charlotte ordinances provided for predeprivation hearings when possible. *Id.* (citations omitted). The plaintiffs alleged that the defendant Superintendent's failure to give notice was the result of a wilful and reckless failure to search public records adequately to ascertain the plaintiffs' correct address, a duty that the law imposed on the defendants. *Id.* at 1183–84.

The Fourth Circuit characterized the sole issue on appeal as whether *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), required the dismissal of the case. The majority of the panel set out to determine whether the plaintiffs' allegations fell under the analysis of *Logan v. Zimmerman Brush Company,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1972) or under the analysis of *Parratt.* In the opinion of the Fourth Circuit, *Logan* differed from *Parratt* in that *Logan* concerned a state statutory scheme that the Supreme Court had found violative of due process while *Parratt* applied to the random acts of any state employee. The panel asserted that *Parratt* applied to the facts in *Yates* because the Superintendent had acted in contravention of established state policy. *Yates,* 782 F.2d at 1185. Because the plaintiffs had an adequate state law remedy, the court dismissed the case against all defendants. *Id.*

Judge Ervin dissented from the panel's opinion. *Id.* at 1185–91 (Ervin, J. dissenting). The dissent characterized the plaintiffs' claim as an assertion that the Superintendent's action constituted an exercise of the policy and custom of the City. *Id.* at 1188. After an admirable and exhaustive explication of the value of the predeprivation process whenever possible, the dissent pointed out simply that as a motion to dismiss the court must accept the plaintiffs' allegations as true. *Id.* at 1190. Because the plaintiffs had alleged that the municipality had a custom or policy that contravened due process, despite the laws of the state or city, the dissent argued that the complaint stated a cause of action. *Id.*

Two considerations convince this court that the majority in *Yates* misapplied *Parratt.* First, although the majority considered the practicality of a predeprivation hearing, it failed to discern or to explain who or what entity was responsible for the impracticality of predeprivation process. Second, without explanation the panel dismissed all of the defendants when it determined that no action stood against the municipality.

■ The court does not believe that the existence of a statute that the Village might have contravened should preempt the right of the plaintiff to expect the Village government to follow the statute. To this extent the court declines to follow the majority opinion of *Yates*. The attempt by the state to provide process to its citizens will be of little effect if municipalities violate those procedures. For the same reasons, municipal ordinances are of little value if the very municipality that passes them ignores them. The effect of *Parratt* is to limit liability to those government entities that are responsible for violating due process. Consequently this court believes that the panel in *Yates* erred in dismissing the City because the State had attempted to provide process. Also this court believes the panel erred in holding that *Parratt* would allow the City to avoid liability by passing statutes that the City ignores.

By the same token the court does not believe that the panel in *Yates* was correct to dismiss the Superintendent simply because the panel did not believe that the City was responsible for a due process violation. As the Seventh Circuit noted in *Powe*, absolving the municipality will not necessarily absolve the agent. *Powe*, 664 F.2d at 649. Therefore this court declines to follow the effect of *Yates* to dismiss the municipality's agent on the basis of finding that the municipality is not subject to section 1983 liability.

The court also believes that the present action is distinguishable from *Yates*. First, the delay by the Village in taking the various steps to demolish the plaintiff's house conclusively rebuts any argument that the Village required quick action as a matter of public safety. Second, several pieces of evidence suggest the involvement of Village policymakers in the decision.

So, for the Village to merit summary judgment in this action, it must show that there is no question of material fact that the actions taken were the unilateral actions of the defendant Kelly. If the actions were Kelly's alone and Kelly is not under state law a Village policymaker, process by the Village would be impractical within the meaning of *Parratt* and *Hudson*. Moreover, the Village could not be said to have a policy or custom of denying process within the meaning of *Tuttle* or *Pembaur*.[3]

■ The court believes that a question of material fact remains concerning the extent of the involvement of the Village through its Board members in the decision not to attempt to give notice. Also neither party has given the court any direction on the question under Illinois law whether the Village Attorney or Board members are the final, responsible decisionmakers with respect to notice requirements. *See Pembaur*, —— U.S. at ——, 106 S.Ct. at 1299 (plurality opinion) (determination of authority is question of state law).

Material issues of fact remain concerning the Village's involvement in the demolition proceedings. Material issues of fact also remain as to Kelly's actions, whether they were reckless or intentional. Therefore the court will not grant summary judgment on any of these issues.

**B. The Warrantless Entry of the House.**

Both parties also move for summary judgment on the issue whether the defendants' warrantless entry into the plaintiff's house violated her fourth amendment rights. The facts directly underlying this

---

**3.** The court views the decisions in *Parratt* and *Hudson* as dovetailing with the decisions in *Tuttle* and *Pembaur*: each opinion concludes that governmental entities are not liable under section 1983 for the actions of their agents unless the agent is a policymaker or following the directions of a policymaker.

*Parratt* and *Hudson* point out that a governmental entity cannot violate due process by failing to give predeprivation process when the entity could not have foreseen the deprivation. *Tuttle* and *Pembaur* add that governmental entities act only through their policymaking officials and the custom and practice that those officials promote. Under either analysis, an entity is not liable when a nonpolicymaking employee takes a random action in contravention of the custom or policy of due process that the entity seeks to enforce.

count are uncontested. The Village had determined in some fashion that the house at 5305 Orchard Drive was uninhabitable. On or about July 14, 1985, Trustee Roland Hughes called the Village Police Department to relay information that a woman was illegally occupying the house. The Village Police Chief drafted a Jane Doe complaint stating that an unknown female was maintaining a public nuisance by establishing residency in the house. The Village Health Officer and Trustee, Thomas Olson, signed the complaint. At 9:30 a.m., one police officer and Olson went to the house but found no one there. The door was unlocked and ajar. The two entered the house although neither had a warrant and neither had received the plaintiff's consent to enter or search the house.

The defendants argue that because the door was often left unlocked or ajar, because many of the windows were broken, and because the plaintiff was not then residing in the house, the plaintiff had no reasonable expectation of privacy in the house. The defendants depend on *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

■ It seems odd that although the purpose of the search according to the Health Inspector's complaint was to find out if someone had taken up residence in the house, the defendants now stake their argument on the fact that the house was actually unoccupied. The analysis of *Katz* concerning an expectation of privacy in the house, however, is not whether the house was occupied. The test of *Katz* is whether " 'the expectation [is] one that society is prepared to recognize as "reasonable." ' " *Michigan v. Clifford*, 464 U.S. 287, 291, 104 S.Ct. 641, 646, 78 L.Ed.2d 477 (1984) (quoting *Katz*, 389 U.S. at 361, 88 S.Ct. at 516). Given the substantial issues concerning the condition of the house, the court will not grant summary judgment on the reasonableness of any expectation of privacy.

## C. The Determination that the House was Uninhabitable.

■ The defendants also seek summary judgment on the plaintiff's charge that the defendants violated her due process rights by depriving her of the enjoyment of her property without due process. The plaintiff contends that the defendants refused to let her live in, repair, or sell her house.

The plaintiff does not move for summary judgment on the issue, stating that there are questions of material fact. The defendant asserts that the plaintiff cannot make out a due process claim in any event. The court will treat this part of the claim as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the purpose of this motion the court will accept the plaintiff's contentions as true. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Greene v. Finley*, 749 F.2d 467, 468 (7th Cir.1984).

There is no dispute that the Village "redtagged" the plaintiff's house. The Village left a red tag on her door that indicated a violation of the Village building regulations. The tag does not state that the house is uninhabitable or that the plaintiff could receive an administrative hearing on the substance of the violation.

Moreover, the Village's own regulations provide a right to a hearing absent some exigency before it may prohibit someone from residing in his or her house. This procedure requires written findings by the Building Officer of the hazardous conditions, a written notice of findings, and a remedial order to the building order and a hearing before the Building Officer. McHenry County Building Ordinance, Art. I § 110(H).

The plaintiff contends that without any such notice of a right to a hearing several Village officials took actions to prevent her from using her house. The plaintiff contends that the Village President and the Chief of Police told the plaintiff and the plaintiff's daughter that anyone who tried to live in the house would be subject to arrest. The Village Building Officer took action to halt the county weatherization work and the Chief of Police told the plaintiff that she would need a building permit to do anything more than cleaning.

The defendants argue that the plaintiff had no property right in the county weatherization grant, a building permit, or the simple use of her house. Assumedly all of the defendants' actions were pursuant to some determination that the house was uninhabitable. Therefore the issue arises whether the Village pursued a policy of treating the plaintiff's house as uninhabitable and, if so, did the defendant Village provide the plaintiff with adequate process in the determination of uninhabitability.

To meet the first prong of this question, whether the Village made the house uninhabitable, the Seventh Circuit has made clear that the deprivation of enjoyment need not be permanent and need not amount to a technical deprivation. The circuit has recognized that a deprivation may be perfected by interferring with a citizens' relationship to a physical thing such as the right to possess, use, and dispose of the thing. *Barbian v. Panagis*, 694 F.2d 476 (7th Cir.1982) (citing *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 142–43, 98 S.Ct. 2646, 2668–69, 57 L.Ed.2d 631 (1978) (Rehnquist, J., dissenting)). More recently the circuit court has stated, "if the government makes your house uninhabitable, that is a taking of your property even if you retain a clear title." *Reed v. Village of Shorewood*, 704 F.2d 943, 949 (7th Cir.1983) (citing *Barbian*).

It is clear under Seventh Circuit law that the plaintiff states a claim for which the court can grant relief. Therefore the court denies the defendant's motion whether characterized as a motion to dismiss or a motion for summary judgment.

### CONCLUSION

The defendants have moved for summary judgment or judgment on the pleadings on each count of the complaint. Because each count of the complaint states a cause of action but there are issues of material fact the court denies the defendants' motions. The defendants also move to dismiss the plaintiff's claim that the defendants deprived the plaintiff of the enjoyment of her house without due process of law. Because the plaintiff states an adequate claim the court denies the motion to dismiss. The plaintiff has moved for summary judgment on two counts. Because each count yet involves issues of material fact the court denies the plaintiff's motions.