909 F.2d 94
 62 Ed. Law Rep. 55
 Ralph Rodney FIELDS, Plaintiff-Appellant,
v.
Joseph T. DURHAM, Individually, and as President of
Community College of Baltimore; Community College of
Baltimore; Mayor and City Council of Baltimore City; James
S. Jeffers, Chairman of the Board of Trustees Community
College of Baltimore; The Board of Trustees Community
College of Baltimore, Defendants-Appellees.
 No. 88-1564.
 United States Court of Appeals,
Fourth Circuit.
 Submitted March 7, 1990.
Decided July 19, 1990.
Rehearing and Rehearing In Banc
Aug. 14, 1990.
 
 Barry Lee Steelman and Nicholas D. Cowie, Barry L. Steelman, P.A., Baltimore, Md., for plaintiff-appellant.
 Neal M. Janey and Burton H. Levin, Baltimore, Md., for defendants-appellees.
 Before CHAPMAN, WILKINSON and WILKINS, Circuit Judges.
 WILKINSON, Circuit Judge:
 
 
 1
 This case comes to us on remand from the Supreme Court. --- U.S. ----, 110 S.Ct. 1313, 108 L.Ed.2d 489 (1990). It was brought by Ralph Fields, a dismissed community college dean, against several college and local officials whom Fields alleges discharged him without due process. We originally upheld the district court's summary judgment dismissal of the case on the basis of Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), reasoning that because the officials' alleged failure to follow state procedures in connection with Fields' termination was "random and unauthorized," due process was satisfied by the meaningful postdeprivation remedies available under state law. Fields v. Durham, 856 F.2d 655 (4th Cir.1988) (Fields I ).
 
 
 2
 On March 5, 1990, the Supreme Court granted certiorari in Fields I, vacated the judgment, and remanded the case for further consideration in light of its decision in Zinermon v. Burch, --- U.S. ----, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). After reviewing supplemental briefs submitted by the parties, we conclude that Fields has not alleged a due process violation because he has received sufficient process to satisfy the requirements of the Fourteenth Amendment.
 
 
 3
 We thus affirm the judgment of the district court, but for reasons different from those expressed in our earlier decision.
 
 I.
 
 4
 Ralph Fields joined the faculty of the Community College of Baltimore in 1967, where he received faculty tenure three years later. Fields was appointed Dean and Provost of the College in 1978, a position to which he was reappointed in 1984. Under the College's "Conditions of Appointment for Administrators and Non-Instructional Personnel," a document issued pursuant to a 1979 collective bargaining agreement, "[a]n administrative title [could] not be held concurrently with professional rank."
 
 
 5
 On June 27, 1986, Joseph Durham, President of the Community College, informed Fields that he was being dismissed as Dean and Provost of the College. Fields' dismissal came after he had been notified of deficiencies in his performance and after he had received an unsatisfactory evaluation. Fields was told of his right to appeal his dismissal to the President's Cabinet, but he did not take that appeal and instead sought direct review of the termination decision by the Board of Trustees. At the hearing before the Board, Fields was represented by counsel, produced witnesses on his behalf, presented numerous exhibits, and had the opportunity to testify and cross-examine witnesses. After the hearing on August 12, 1986, the Board unanimously affirmed Fields' discharge.
 
 
 6
 Fields subsequently brought this 42 U.S.C. Sec. 1983 suit against the College, its trustees, President Durham, and the Mayor and City Council of Baltimore, alleging that his property interest in continuing employment had been denied without due process. He alleged that the process with which he was provided failed to conform with that required by the College's rules and regulations and his employment agreements. He also alleged numerous pendent state law claims sounding in contract and tort. The district court granted defendants' motion for summary judgment on the Sec. 1983 claim and declined jurisdiction over the pendent state law claims.
 
 
 7
 We affirmed the district court's judgment in Fields v. Durham, 856 F.2d 655 (4th Cir.1988) (Fields I ). After deciding that Fields' complaint alleged at most a random and unauthorized failure of college officials to follow state procedures in connection with his termination, we held, relying on Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), that due process was satisfied by the meaningful postdeprivation remedies available under Maryland law. The Supreme Court granted certiorari in Fields I, vacated the decision, and remanded for consideration in light of Zinermon v. Burch, --- U.S. ----, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).
 
 
 8
 We now consider how Zinermon affects this case.
 
 II.
 
 9
 Zinermon involved a Sec. 1983 suit brought by Darrell Burch against physicians, administrators, and staff members at Florida State Hospital (FSH), a mental hospital in Chattahoochee, Florida. The state officials admitted Burch into FSH in accordance with Florida's statutory requirements for voluntary admission to mental health facilities. Burch alleged, however, that he was medicated and disoriented at the time of his admission, and thus was incompetent to give his informed consent. He claimed that the Florida officials "should have afforded him procedural safeguards required by the Constitution before involuntary commitment of a mentally ill person," 110 S.Ct. at 977, and that they deprived him of his liberty without due process by admitting him as a voluntary patient without determining whether he was competent to consent to confinement. The Supreme Court held that these allegations stated a claim under Sec. 1983 because Burch's deprivation (a) was foreseeable due to the nature of mental illness and (b) could have been guarded against by the state through a predeprivation procedure to determine competence. 110 S.Ct. at 987-90.
 
 
 10
 Zinermon makes clear that to determine whether a procedural due process violation has occurred, courts must consult the entire panoply of predeprivation and postdeprivation process provided by the state. 110 S.Ct. at 983. The Supreme Court emphasized, however, that the Due Process Clause normally requires a hearing "before the State deprives a person of liberty or property." Id. at 984 (emphasis in original). The general requirement that a state provide predeprivation process reduces the likelihood that erroneous deprivations of constitutionally protected interests will occur. In some situations, though, the state cannot foresee, and thus cannot avert through implementation of prescriptive procedures, the deprivation in issue. Id. at 984-85. In this narrow class of cases, the Parratt/Hudson rule applies, and "postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide." Id. at 985. Under Zinermon, however, the provision of some predeprivation process remains the preferred constitutional course.
 
 
 11
 Zinermon thus requires that we first ask whether the risk of an erroneous deprivation was foreseeable, and next "whether predeprivation safeguards would have any value in guarding against the kind of deprivation ... allegedly suffered." Id. at 988. In the present case, the general risk of deprivation concerned the erroneous deprivation of a public education official's property interest in employment. We believe that this risk was foreseeable, and that Maryland acted to address it by prescribing predeprivation procedures to ensure that its education officials not be erroneously terminated. The termination procedures for administrators and members of the faculty differed in detail (for example, administrative termination required at least thirty days prior notice; dismissals from the faculty required, except for cases of moral turpitude, prior notice of a year). Both classes of personnel, however, were guaranteed prior notice, a statement of the grounds for dismissal, an opportunity to respond, and the right to appeal the termination decision.
 
 
 12
 Predeprivation process was not only prescribed here, it was actually provided. On June 27, 1986, Fields received notice from President Durham that his performance as Dean of the Faculty and Provost contained "serious deficiencies," and had been rated "unsatisfactory." After being told of the reasons for his dismissal, Fields was able to appeal the decision both to the President's Cabinet and to the Board of Trustees. Fields did not take his appeal to the President's Cabinet, but instead appealed directly to the Board of Trustees, before whom, as we have noted, he received a hearing, was represented by counsel, produced witnesses on his behalf, presented numerous exhibits, and had the opportunity to testify and cross-examine witnesses.
 
 
 13
 In Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 535, 105 S.Ct. 1487, 1489, 84 L.Ed.2d 494 (1985), the Supreme Court considered "what pretermination process must be accorded a public employee who can be discharged only for cause." Loudermill applied the balancing test of Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), which Zinermon reaffirms is the proper standard by which to judge the adequacy of the process afforded. See Zinermon, 110 S.Ct. at 984. The Loudermill Court emphasized that "the pretermination 'hearing,' though necessary, need not be elaborate." 470 U.S. at 545, 105 S.Ct. at 1495. "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546, 105 S.Ct. at 1495. We conclude that the substantial process provided to Fields more than satisfies the requirements of Loudermill.
 
 
 14
 Fields maintains, however, that the process he received was insufficient. He asserts that in addition to his status as an administrator, he was also a tenured member of the faculty. He argues that he had two distinct property interests warranting two distinct predeprivation procedures: one for his termination as an administrator, and one for his termination as a member of the faculty. He contends that the school only provided him with a pretermination hearing regarding his administrative position, and failed to give him any process at all concerning his termination as a member of the faculty.
 
 
 15
 We think this argument is flawed. Whether Fields retained, or under what conditions he might return to, his position as a member of the tenured faculty after assuming his role as an administrator is unclear. The rules of the College, as embodied in the "Conditions of Appointment for Administrative and Non-Instructional Personnel," do not appear to permit an administrator to hold a tenured faculty position.
 
 
 16
 Drawing the inferences on this point in his favor, however, still will not permit Fields to prevail. His argument implies that within the property interest in employment created by state law exist numerous entitlements within entitlements to perform specific functions. This court has been reluctant to recognize multiple property interests within the same employment relationship. Although we recognize the significance of an employee's property interest in retaining employment, see Loudermill, 470 U.S. at 543, 105 S.Ct. at 1493, we have previously held that the constitutionally protected property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services. See Huang v. Board of Governors, 902 F.2d 1134 (4th Cir.1990); Royster v. Board of Trustees, 774 F.2d 618, 621 (4th Cir.1985). Rather, the property interest is more generally in continued employment, and no deprivation exists so long as the employee receives "payment of the full compensation due under the contract." Royster, 774 F.2d at 621.
 
 
 17
 The nature of the property entitlement informs the due process analysis. Loudermill, 470 U.S. at 545, 105 S.Ct. at 1495; Mathews v. Eldridge, 424 U.S. at 333-35, 96 S.Ct. at 901-03. Due process need not require an employer as a matter of federal law to provide a succession of different pretermination proceedings commensurate with the various positions an employee might have held over the course of an employer-employee relationship. Under the test for the sufficiency of procedural protection set forth in Mathews v. Eldridge and its progeny, the institution could permissibly focus here on the adequacy of performance and the appropriateness of termination from the job that Fields was performing for it most recently. The locus of dispute between employer and employee concerned Fields' unsatisfactory performance as Dean of the College. This was the basis of his discharge, and the purpose of the hearing was to ascertain whether this basis was erroneous. It was permissible for the predeprivation process to focus upon it. Thus, as a matter of federal law, Fields received constitutionally adequate predeprivation process with regard to his termination from the job he had been performing for Baltimore Community College since 1978.
 
 
 18
 Of course, the adequacy of predeprivation process provided by the state is not the end of our inquiry. Both Zinermon and Loudermill stress that courts must also examine the postdeprivation remedies provided by a state to determine whether federal due process is satisfied. Zinermon, 110 S.Ct. at 983; Loudermill, 470 U.S. at 546-47, 105 S.Ct. at 1495-96. This is so because "[t]he [federal procedural due process] violation actionable under Sec. 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." Zinermon, 110 S.Ct. at 983. We note in this connection that Fields had available numerous postdeprivation remedies here. In fact, he is now in state court seeking compensatory and punitive damages for numerous contract violations and for deprivation of his property interest under the Maryland Constitution. In addition, as evidenced by the pendent claims raised in his federal complaint, Fields also had available state law claims for civil conspiracy, tortious interference with contractual relationships, and wrongful discharge. State court is the proper forum to explore the full nature of the employer-employee relationship, including the extent to which the state has failed in any way to adhere to employment contract provisions with respect to Fields' faculty status. Predeprivation procedures are the "initial check against mistaken decisions," but they "need not definitively resolve the propriety of the discharge." Loudermill, 470 U.S. at 545, 105 S.Ct. at 1495. To shift all the complex congeries of issues implicated by this employer-employee relationship to the predeprivation stage "would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Loudermill, 470 U.S. at 546, 105 S.Ct. at 1495.
 
 
 19
 In short, Fields has received an abundance of process. The state established specific pretermination procedures, state officials provided Fields with actual process before terminating him from his job, and the state provided numerous postdeprivation tort and contract remedies for illegal official action. Recognizing and respecting the role that procedural due process has played in preventing arbitrary deprivations of individual liberty and property, we hold Fields has failed to state a claim under Sec. 1983. The judgment of the district court is thus
 
 
 20
 AFFIRMED.