Tami Charles **PLUMER,**
*Plaintiff–Appellant,*

v.

**STATE OF MARYLAND, Motor Vehicle
Administration of Maryland, W. Marshall Rickert, in His Official Capacity
as Administrator Motor Vehicle Administration of Maryland, Defendants–Appellees.**

No. 89–2108.

United States Court of Appeals,
Fourth Circuit.

Argued March 5, 1990.

Decided Oct. 5, 1990.

Glen Marcus Fallin, Ellicott City, Md., for plaintiff-appellant.

Evelyn Omega Cannon, Asst. Atty. Gen., Baltimore, Md. (J. Joseph Curran, Jr., Atty. Gen., Carolyn A. Quattrocki, Asst. Atty. Gen., Baltimore, Md., on brief) for defendants-appellees.

Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

MURNAGHAN, Circuit Judge:

The appeal causes us to face yet another example of an increasing breed of civil rights litigation: 42 U.S.C. § 1983 actions brought in response to the revocation of driver's licenses. Here, plaintiff, Tami Charles Plumer, has appealed the order of the district court granting summary judgment in favor of the State of Maryland on Plumer's § 1983 claim against the Motor Vehicle Administration ("MVA"). In dismissing, the district court relied on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986). Although we conclude, in light of *Zinermon v. Burch*, — U.S. —, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), that *Parratt* is inapplicable to Plumer's suit, we nonetheless affirm on different reasoning.

## I.

Plumer's suit arises out of the suspension of her driver's license by the MVA.

The MVA initially suspended plaintiff's license for 120 days at a July 16, 1987, hearing, apparently because of a conviction for driving while under the influence of alcohol and for refusing to submit to a breathalyzer test. In the district court, Plumer maintained that the four-month suspension was imposed due to an anonymous letter, received by the MVA on June 2, 1987, that accused Plumer of continual drunk driving. On September 16, 1987, the plaintiff received a letter from the MVA notifying her that her driving privileges would be restored on November 12, 1987. The next day, Plumer wrote to the MVA, requesting that her suspension be reconsidered so she could drive to work. The MVA denied that request.

On October 23, 1987, the MVA informed Plumer that a hearing would be held on November 12, at which time her suspension would be "reexamined" as requested by a "police agency, judge, [or] citizen." The notice stated that Plumer could bring counsel if she wished, but the notice was silent on the supplying for her of counsel by the state. When Plumer appeared at this hearing on November 12 without counsel, the MVA told her that an anonymous complaint had been filed against her,[1] and that the agency had a report that she had been stopped in August 1987 for driving with a suspended license. After answering several questions from the hearing examiner regarding her mental health history, the MVA officer suspended Plumer's license "pending clearance by the Medical Advisory Board."

Plumer then wrote to Governor Schaefer requesting relief but was denied in a letter by Transportation Secretary Trainor, who told her to present medical evidence of her fitness to drive before the Medical Advisory Board. Plumer did, however, manage to obtain a copy of the anonymous letter. Rather than appeal the MVA's decision to the Circuit Court for Calvert County, Plumer filed a § 1983 action in the district court, requesting preliminary and permanent injunctive relief enjoining defendants

---

1. At the hearing, plaintiff was permitted to see a copy of the anonymous letter, but she was not allowed to keep a copy or find out the identity of the author.

from suspending her license. Plaintiff asserted that her Fourteenth Amendment due process rights had been violated in two ways. First, Plumer alleged that the MVA officers suspended her license in violation of state law by, *inter alia,* impermissibly relying on the anonymous letter, and by forcing her to answer questions concerning her mental health without counsel. Second, plaintiff alleged that her right of appeal to the Circuit Court for Calvert County was an inadequate remedy because the judge who probably would have heard her appeal was biased against her.

The district court granted the state's motion to dismiss for lack of subject matter jurisdiction. The court found that because the license revocation occurred as the result of an individual "random and unauthorized act," the due process claim could only survive if Maryland's postdeprivation remedies were inadequate. Relying on *Parratt,* the district court concluded that the state's postdeprivation remedy (*i.e.,* right of appeal) was adequate. The court also found that plaintiff had no right to court-appointed counsel at her administrative hearing or in a civil appeal, and that her indigency would not have prevented any appeal to the Circuit Court or Maryland Court of Special Appeals.

## II.

We begin our analysis with *Parratt v. Taylor,* the case relied upon by the district court. In *Parratt,* the Supreme Court held that when the state deprives an individual of a property interest as the result of an unauthorized failure of its agents to follow state procedure, due process is satisfied by the availability of meaningful postdeprivation process. 451 U.S. at 543–44, 101 S.Ct. at 1916–17. One year later, in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), the Court held that *Parratt*-type postdeprivation remedies are insufficient where a deprivation of property is effected pursuant to estab-

lished state procedures. Two years after *Logan,* in *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203, 82 L.Ed.2d 393 (1984), the Court extended *Parratt* to include the intentional destruction of a prisoner's property. Unlike *Logan* (but as in *Parratt*), the state official in *Hudson* was not acting pursuant to any established state procedure, but instead was pursuing a random, unauthorized personal vendetta against the prisoner. The *Hudson* Court characterized the "controlling inquiry" under *Parratt* as "solely whether the state is in a position to provide for predeprivation process." 468 U.S. at 534, 104 S.Ct. at 3204. The Court reiterated that "[t]he underlying rationale of *Parratt* is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." *Id.* at 533, 104 S.Ct. at 3203. After *Hudson,* the Court once again noted that *Parratt* does not extend to *Logan*-type cases "in which the deprivation of property is effected pursuant to an established state policy or procedure, and the State could provide predeprivation process." *Williamson Co. Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 195 n. 14, 105 S.Ct. 3108, 3121 n. 14, 87 L.Ed.2d 126 (1985).

In response to some confusion in the courts of appeal regarding the scope of the *Parratt* doctrine,[2] the Supreme Court recently reemphasized *Parratt*'s narrow scope. In *Zinermon v. Burch,* —— U.S. ——, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), the respondent Burch brought a § 1983 action against a Florida mental institution, arguing that the state deprived him of his liberty by admitting him as a "voluntary" mental patient when he was incompetent to give informed consent to his admission. Burch claimed he was entitled to receive the procedural safeguards provided by the state's involuntary placement procedure, and that the state violated his due process

---

**2.** Several circuits, including the Fourth, had held that *Parratt* applies even to deprivations effected by the very state officials charged with providing predeprivation process. *See, e.g.,* *Yates v. Jamison,* 782 F.2d 1182, 1185 (4th Cir. 1986); *Holloway v. Walker,* 784 F.2d 1287, 1292–93 (5th Cir.1986).

rights by failing to initiate that procedure. For the Court, "[t]he question presented is whether these allegations suffice to state a claim under § 1983, in light of *Parratt* and *Hudson.*" 110 S.Ct. at 982.

Writing for a divided Court, Justice Blackmun held that *Parratt* was inapplicable to Burch's suit for three reasons. First, the Court found that the deprivation of Burch's liberty was foreseeable. "Any erroneous deprivation will occur," noted the Court, "at a specific, predictable point in the admission process—when a patient is given admission forms to sign." *Id.* at 989. Thus, the Court concluded that *Parratt* "comes into play" only in the situation where "postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide." *Id.* at 985. Second, because the risk of deprivation was foreseeable, the Court found that Florida could have provided predeprivation due process in the mental health care voluntary admission procedure. Third, the Court held that the conduct of the state employees was not "unauthorized" as that term was used in *Parratt* and *Hudson.* The Court explained:

> The State delegated to [the state employees] the power and authority to effect the very deprivation complained of here, Burch's confinement in a mental hospital, and also delegated to them the concomitant duty to initiate the procedural safeguards set up by state law to guard against unlawful confinement. In *Parratt* and *Hudson,* the state employees had no similar broad authority to deprive prisoners of their personal property, and no similar duty to initiate ... the procedural safeguards required before deprivations occur. The deprivation here is "unauthorized" only in the sense that it was not an act sanctioned by state law, but, instead, was a "depriv[ation]" of constitutional rights ... by an official's abuse of his position."

*Id.* 110 S.Ct. at 990 (quoting *Monroe v. Pape,* 365 U.S. 167, 172, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961)). Because Burch's claim was not controlled by the *Parratt/Hudson* doctrine, the Court concluded that Burch properly stated a § 1983 claim for the state's failure to provide him predeprivation due process.

■ "The lesson of *Zinermon,*" declared the Fifth Circuit recently, "is that the *Parratt/Hudson* doctrine is restricted to cases where it truly is impossible for the state to provide predeprivation procedural due process before a person unpredictably is deprived of his liberty or property through the unauthorized conduct of a state actor." *Caine v. Hardy,* 905 F.2d 858, 862 (5th Cir.1990). We agree, and so conclude that *Parratt* is inapplicable to Plumer's suit against the state. Under *Zinermon,* as we concluded recently, we must "first ask whether the risk of an erroneous deprivation was foreseeable, and next 'whether predeprivation safeguards would have any value in guarding against the kind of deprivation ... allegedly suffered." *Fields v. Durham,* 909 F.2d 94, 97 (4th Cir.1990) (*Fields II*) (quoting *Zinermon,* 110 S.Ct. at 988).[3]

---

**3.** Our disposition in *Fields II* lends further weight to our conclusion regarding the inapplicability of *Parratt.* In *Fields v. Durham,* 856 F.2d 655 (4th Cir.1988) (*Fields I*), we upheld the summary judgment dismissal of a fired college dean on the basis of *Parratt* and *Hudson,* reasoning that because the college's failure to follow state procedures was "random and unauthorized," due process was satisfied by the meaningful postdeprivation remedies available. That conclusion was bolstered by our previous ruling in *Yates v. Jamison,* 782 F.2d 1182 (4th Cir. 1986), where we used *Parratt* to uphold the dismissal of a challenge to municipal demolition procedures. Despite the fact that a predeprivation hearing was practicable, we concluded in *Yates* that the § 1983 claim failed because plaintiffs possessed "an adequate and meaningful postdeprivation remedy in the form of an action for inverse condemnation in state court." 782 F.2d at 1185.

It was in part because the holdings in *Yates* and *Fields I* were contrary to the results in other circuits, *see, e.g., Rittenhouse v. DeKalb County,* 764 F.2d 1451, 1455 (11th Cir.1985) ("where a deprivation occurs pursuant to an established state procedure, predeprivation process is ordinarily feasible" and *Parratt* inapplicable), *cert. denied,* 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986), that the Supreme Court granted certiorari in *Zinermon.* After *Zinermon* the Supreme Court vacated and remanded *Fields I.* Applying *Zinermon* in *Fields II,* we concluded that although *Parratt* did not bar Fields' suit, the

■ In the present case, the risk of an erroneous license deprivation clearly was foreseeable. Indeed, the state surely realizes that for it has developed procedural safeguards to protect against erroneous deprivations.[4] When utilized, the procedures established by the state to ensure correct license suspensions have significant value in guarding against any erroneous deprivations. But the fact that the predeprivation procedures are practicable indicate, as in *Zinermon,* the inapplicability of *Parratt.* Moreover, we conclude, using the test from *Zinermon,* that the conduct of the state employees here was not "unauthorized," for the state has delegated to its employees "the power and authority to effect the very deprivation complained of here, ... and also delegated to them the concomitant duty to initiate the procedural safeguards set up by state law to guard against unlawful confinement." *Zinermon,* 110 S.Ct. at 990. In short, when a state government can and does provide a predeprivation hearing and charges its employees with effecting the deprivation complained of, the availability of an adequate state postdeprivation remedy does not, standing alone, satisfy the Due Process Clause. *See Mathias v. Bingley,* 906 F.2d 1047 (5th Cir.1990) (applying *Zinermon*).

### III.

To conclude, as we do, that *Parratt* does not bar Plumer's claim is of course far different from saying that the procedures instituted by the state run afoul of the Due Process Clause. To the contrary, another route to the same result may have been available though not resorted to by the district court. We conclude that the application of Maryland's license revocation procedures to Plumer satisfied due process requirements. In her complaint, Plumer alleged that Maryland's license suspension procedures deprived her of due process in two ways: first, the MVA erred by relying on the anonymous letter and by forcing Plumer to answer questions concerning her mental health without appointed counsel, and second, the MVA provided an inadequate right of appeal because her appeal would "probably" have been assigned to Judge Perry G. Bowen, Jr., who, according to Plumer, was substantially biased against her.

■ It is well settled that a driver's license is a property interest that may not be suspended or revoked without due process. *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Both the Supreme Court and we, however, have held that a license suspension does not require a full-blown evidentiary hearing, although notice and an opportunity to be heard are required. *See Dixon v. Love,* 431 U.S. 105, 115, 97 S.Ct. 1723, 1729, 52 L.Ed.2d 172 (1977) (license suspension "good illustration of the fact that procedural due process in the administrative setting does not always require application of the judicial model"); *Tomai–Minogue v. State Farm Mutual Automobile Ins. Co.,* 770 F.2d 1228, 1235 (4th Cir.1985) (interest in driver's license "is not so great as to require departure from the principle that an evidentiary hearing is not ordinarily required prior to adverse administrative action"). We interpret *Dixon* and *Tomai–Minogue* to require only that a licensee be informed of the evidence on which the agency is relying, and be given a chance to rebut such evidence, but we do not view the rebuttal opportunity as including the right to formal confrontation of an anonymous witness. *Cf. Gilles v. Touchstone,* 676 F.Supp. 341, 344 (D.D.C.1987) (agency did not deny driver due process by failing to show him his record, as long as agency informed individual of the record and gave him an opportunity to contest it). Moreover, we reiterate the well-established principle that the right to counsel applies only to criminal or quasi-criminal proceedings and does not extend

procedures in place by the college satisfied the requirements of the Fourteenth Amendment. *Fields II,* 909 F.2d at 98–99. We reach a similar conclusion here.

**4.** For example, the state provides a licensee with an opportunity to provide evidence regarding medical fitness to drive, and also allows an appeal from the suspension to the circuit court for the county in which the party resides. *See* Md.Transp.Art. §§ 12–206; 12–209 (1987).

to administrative license revocation proceedings. *See Ferguson v. Gathwright,* 485 F.2d 504, 506–07 (4th Cir.1973) (neither the Due Process Clause nor the Sixth Amendment requires the appointment of counsel in the civil adjudication of a loss of driving privileges), *cert. denied,* 415 U.S. 933, 94 S.Ct. 1447, 39 L.Ed.2d 491 (1974).

■ With those legal guidelines in mind, we conclude that the MVA procedures more than satisfy the constitutional requirements for license suspensions. For example, the MVA cannot suspend any license without *first* making available a hearing prior to the suspension. *See* Md. Transp.Art. § 12–202 (1987). Such a hearing is held only after written notice is given to the licensee setting forth the time and place of the hearing, and the factual basis for the suspension action. Md.Transp.Art. § 12–204 (1987). Finally, the licensee has the right to inspect and copy all evidence, as well as call witnesses and present rebuttal evidence. Md.Transp.Art. § 12–206 (1987). The Due Process Clause requires perhaps even less. It certainly requires no more for this type of liberty interest. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) (extent of process due depends on nature of property interest, the government's interest, and the risk of an erroneous deprivation); *Tomai–Minogue,* 770 F.2d at 1235.

■ Plumer's second argument, that the state's right of appeal was inadequate because the judge who might have been chosen to hear the appeal in her case was biased against her, is without merit. It requires several levels of speculation to assume that Judge Bowen (the Calvert County circuit judge who had heard prior matters involving Plumer) would have heard her case, would have been biased against her, and would have refused to

recuse himself from her MVA appeal. The Due Process Clause protects against inadequate state remedies and procedures, but not against the remote possibility of uncorrected mistake or bias. *See Vicory v. Walton,* 721 F.2d 1062, 1065 (6th Cir.1983) (§ 1983 not violated "[s]o long as a state's damage remedies are not shown to be inadequate in theory or practice—that is, so long as there is no systemic problem with the state's corrective process"), *cert. denied,* 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984). Moreover, even if the fears of bias proved correct, Plumer still had the remedy of appealing to the Maryland Court of Special Appeals; indeed, the Court of Special Appeals already had reversed Judge Bowen in a prior case involving Plumer.

In sum, we conclude that, although *Parratt v. Taylor* does not bar Plumer's § 1983 action, the state's license revocation procedures satisfy the requirements of due process.[5]

AFFIRMED.

---

5. In so concluding, we affirm only the dismissal of plaintiff's cause of action, and not the dismissal for lack of subject matter jurisdiction. When a defendant moves for dismissal both on lack of subject matter jurisdiction grounds, Fed. R.Civ.P. 12(b)(1), and for failure to state a claim, Fed.R.Civ.P. 12(b)(6), "the proper procedure for the district court is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's

case." *Daigle v. Opelousas Health Care, Inc.,* 774 F.2d 1344, 1347 (5th Cir.1985). *See also* 2A J. Moore, J. Lucas, & G. Grotheer, *Moore's Federal Practice* ¶ 12.07[2.–1], at 12–50 (1985) ("courts have uniformly held that [when a substantial federal question arguably is absent] the preferable practice is to assume that jurisdiction exists and proceed to determine the merits of the claim pursuant to Rule [12(b)(6) ]").