Nancy BOCKES, Plaintiff,

v.

Bettye Lou FIELDS, Robert Wells, and Dennis Cooley, Individually and in Their Official Capacities as Members of the Board of Social Services, Grayson County, Virginia, Department of Social Services, Grayson County, Virginia, and County of Grayson, Virginia, Defendants.

Civ. A. No. 91–0062–A.

United States District Court, W.D. Virginia, Abingdon Division.

July 30, 1992.

Kurt J. Pomrenke, White, Elliott & Bundy, Bristol, Va., for plaintiff.

Robert V. Ward, Bristol, Va., for defendants.

## MEMORANDUM OPINION

WILSON, District Judge.

After thirteen years as Director of Social Services of Grayson County, Virginia, a position classified as "permanent" by the Department of Social Services personnel manual, plaintiff, Nancy Bockes ("Bockes"), was terminated without notice and a pre-termination hearing. Following a post-termination hearing nearly a year later, a grievance panel found the termination to be improper. The grievance panel, however, did not order full backpay. Alleging that she was entitled to notice and a hearing before being discharged, Bockes brought this action against Grayson County, Virginia (the "County"), the Grayson County, Virginia Department of Social Services (the "Local Department"), and the members of the Grayson County, Virginia Board of Social Services, Bettye Lou Fields, Robert Wells, and Dennis Cooley, individually and in their official capacities (collectively "the Local Board"). The case was tried by a jury. At the conclusion of the evidence on liability, the court found that Bockes had a property interest, which entitled her to the protections of procedural due process under the Fourteenth Amendment. The court found, however, that the Local Board members had qualified immunity in their individual capacities.

The Local Department and the Local Board members in their official capacities argued that the Eleventh Amendment precluded an award of damages against them. They also argued that even if they had no Eleventh Amendment immunity, they could not be held liable because Bockes was not fired "pursuant to a policy, custom or usage," a prerequisite to liability under *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). The County argued that it could not be held liable because the Local Department is a state agency, not a county agency, and that even if the Local Department were not a state agency, Bockes was not fired "pursuant to a policy, custom or usage" of the County. The court took the matter under advisement and submitted the question of damages to the jury by way of special interrogatory.[1]

1. The parties stipulated that the following damages were incurred by Bockes:

| | |
|---|---|
| Health Premiums | $ 1,557.39 |
| Travel | $ 441.00 |
| Court Reporter | $ 1,392.00 |
| Lost Wages | $ 9,770.89 |
| Total | $13,161.28 |

The jury awarded compensatory damages of $20,000. For the reasons that follow, the court now finds that the Eleventh Amendment precludes a damage award against the Local Department and the Local Board but concludes that the County is liable for the jury verdict of $20,000.

## I.

Bockes was employed as director of the Local Department from 1977 to 1990. The Local Personnel Administrative Manual ("Volume 1A") for the Local Department classifies the position as "permanent." According to Volume 1A, a "permanent position is a position of indefinite duration; there is no expiration date on such positions," and a permanent employee may be terminated only for cause. On June 8, 1990, the Local Board met with Bockes and told her that they had "lost confidence" in her. The Local Board then gave Bockes the option of resigning or being fired. Before responding, Bockes asked to make a phone call. After receiving advice from her lawyer, Bockes asked the Local Board to list the reasons for her dismissal in writing and to give her an opportunity to respond. The Local Board declined on advice of counsel, and after Bockes refused to resign, the Local Board fired her. Bockes filed a grievance pursuant to Va. Code Ann. §§ 2.1–110 to 2.1–116. The grievance panel ordered the Local Board to reinstate Bockes and awarded her one-half of her backpay. Bockes then filed this suit to recover her remaining backpay as well as compensatory damages, alleging that the Local Board had violated her due process rights by not notifying her of the reasons for her termination and by not giving her an opportunity to respond to those reasons before her termination.

**2.** The wisdom of insulating a department head by classifying his or her position as a "permanent" position might be subject to debate. This, however, is not the forum for that debate. This court's role is limited to determining whether Bockes had a legitimate expectation of continued employment founded in state law, *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), whether by statute, *Detweiler v. Virginia Dep't of Rehabilitative Services*, 705 F.2d 557, 590–60 (4th Cir.1983), by contract, *Perry v.*

## II.

█ As the court stated at trial, based upon the evidence presented, Bockes was a "permanent employee" with the Local Department, which gave Bockes a property interest in her job.[2] This property interest entitled Bockes to receive procedural due process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985). Procedural due process required that Bockes receive notice and "some kind of a hearing" before discharge. *See id.* at 542, 105 S.Ct. at 1493. Bockes received neither.

█ At trial the defendants argued that the actions of the Local Board were "random and unauthorized," and therefore, *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part by, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), not *Loudermill*, governs. Under *Parratt*, post-deprivation remedies may be sufficient to satisfy due process if the conduct complained of is random and unauthorized. *Id.* 451 U.S. at 543–44, 101 S.Ct. at 1916–17. However, as the Court of Appeals for the Fifth Circuit stated, to apply *Parratt:*

> the deprivation must truly have been unpredictable or unforeseeable; the pre-deprivation procedures must have been impotent to counter the state actors' particular conduct; and the conduct must have been "unauthorized" in the sense that it was not within the officials' express or implied authority.

*Caine v. Hardy*, 943 F.2d 1406, 1413 (5th Cir.1991) (citing *Zinermon v. Burch*, 494 U.S. 113, 132–35, 110 S.Ct. 975, 986–88, 108 L.Ed.2d 100 (1990)). As noted by the court at trial, the absence of any one of those

*Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972), or by rules or mutually explicit understandings that support a claim of entitlement. At trial, the court determined as a matter of law that the department personnel manual created a mutually explicit understanding supporting a claim of entitlement. *See Bradley v. Colonial Mental Health & Retardation Services Bd.*, 856 F.2d 703, 707–08 (4th Cir.1988).

elements would preclude the court from applying *Parratt*. *See id.*

*Plumer v. Maryland,* 915 F.2d 927 (4th Cir.1990), is instructive. Following an informal administrative hearing in which Plumer was shown an anonymous letter that accused Plumer of continual drunk driving, Tami Plumer's motor vehicle license was suspended by the Maryland Motor Vehicle Administration "pending clearance by the Medical Advisory Board." Rather than appeal the suspension to the circuit court, Plumer filed a § 1983 action in the United States District Court for the District of Maryland claiming that her due process rights under the Fourteenth Amendment had been violated. The district court dismissed Plumer's due process claim, finding that the suspension of Plumer's license was a result of a "random and unauthorized act" for which Maryland provided an adequate post-deprivation remedy by way of appeal to the circuit court. Although the court of appeals affirmed because it found no due process violation, it concluded that *Parratt* could not be applied.

According to the Fourth Circuit, "[i]n response to some confusion in the courts of appeal regarding the scope of the *Parratt* doctrine, the Supreme Court recently reemphasized *Parratt*'s narrow scope" in *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). *Plumer,* 915 F.2d at 929 (footnote omitted). The Fourth Circuit expressly agreed with the Fifth Circuit as to "[t]he lesson of *Zinermon*":

> "[T]he *Parratt/Hudson* doctrine is restricted to cases where it truly is impossible for the state to provide predeprivation procedural due process before a person unpredictably is deprived of his liberty or property through the unauthorized conduct of a state actor." *Caine v. Hardy,* 905 F.2d 858, 862 (5th Cir.1990). We agree, and so conclude that *Parratt* is inapplicable to Plumer's suit against the

state. Under *Zinermon,* as we concluded recently, we must "first ask whether the risk of an erroneous deprivation was foreseeable, and next 'whether predeprivation safeguards would have any value in guarding against the kind of deprivation ... allegedly suffered." *Fields v. Durham,* 909 F.2d 94, 97 (4th Cir.1990) (*Fields II*) (quoting *Zinermon,* 110 S.Ct. at 988).

*Id.* at 930. In the Fourth Circuit's opinion, "the risk of an erroneous license deprivation clearly was foreseeable" and procedural safeguards were practicable making *Parratt* inapplicable. *Id.* at 931. Moreover, according to the court:

> the conduct of the state employees here was not "unauthorized," for the state has delegated to its employees "the power and authority to effect the very deprivation complained of here, ... and also delegated to them the concomitant duty to initiate the procedural safeguards set up by state law to guard against unlawful [termination]."

*Id.* (quoting *Zinermon,* 494 U.S. 113, 138, 110 S.Ct. 975, 990, 108 L.Ed.2d 100 (1990)). Thus, Bockes' termination without a sufficient pre-termination hearing does not fall within, in the words of the Fourth Circuit, "*Parratt*'s narrow scope." *Id.* at 929. As in *Plumer,* pre-deprivation process, rather than a post-deprivation remedy, was required under *Zinermon* because pre-deprivation process was possible and the state delegated to the Local Board the power to effect the very deprivation about which Bockes complained.

### III.

◼ The court next must consider whether the Eleventh Amendment precludes Bockes from recovering a judgment against the Local Department and the Local Board because the Local Department is a state agency.[3] The Eleventh Amendment protects unconsenting states "against a pri-

---

**3.** It is well recognized that suits against individuals in their official capacity are actually suits against the governmental entity itself. *Revene v. Charles County Comm'rs,* 882 F.2d 870, 874 (4th Cir.1989) (citations omitted); *Giancola v. West Virginia Dep't of Public Safety,* 830 F.2d 547, 550 (4th Cir.1987). Therefore, Bockes' suit

against the Local Board members in their official capacities is nothing more than a suit solely against the Department. The court will couch its Eleventh Amendment analysis in terms of the County and the Department, but the analysis will necessarily encompass the Local Board as well.

vate party's suit for damages." *Keller v. Prince George's County* (Keller II), 923 F.2d 30, 32 (4th Cir.1991) (citations omitted). It is well settled that "any arm of the state is protected by such immunity." *Id.* (citations omitted). "On the other hand, a municipality or other local government unit does not enjoy the protection of the eleventh amendment and may be sued under § 1983 for constitutional deprivations." *Keller v. Prince George's County* (Keller I), 827 F.2d 952, 963 (4th Cir.1987) (citations omitted). Because the bar of the Eleventh Amendment cannot extend to the County, the question before the court on this score is whether the Local Department is the alter ego of the state for Eleventh Amendment purposes.

Bockes suggests the following factors are considered in determining the status of the Local Department under the Eleventh Amendment: "the characterization of the Department under state law; the extent of state control over the Department; the extent to which it depends on state appropriations; and whether a damage award would come from state funds." *Keller I*, 827 F.2d at 964 (citation omitted). These factors all probe an entity's relative degree of autonomy from the state. *Ram Ditta v. Maryland Nat'l Capital Park and Planning Comm'n*, 822 F.2d 456, 457–58 & n. 4 (4th Cir.1987). However, "the most important consideration is whether the state treasury will be responsible for paying any judgment." *Ram Ditta*, 822 F.2d at 457; *see also Keller I*, 827 F.2d at 964.

According to the evidence presented in this case, if the Local Department were found liable, most of the judgment would be paid by the state. Of the $20,000 jury verdict in favor of Bockes, the state would be responsible for approximately $13,000. This amount would be paid out of the state's Public Officials Liability Self–Insurance Plan, which is managed by the Trea-surer of Virginia, who holds the money for the plan in a separate insurance fund. All political subdivisions in Virginia, including the Local Department, are allowed to participate in the insurance plan, although participation is voluntary. Since the Local Board decided that the Local Department would participate in this state self-insurance plan, the Local Department pays a premium into the insurance fund "using a combination of state and local funds," with the state reimbursing the Local Department for 80% of the premium.

Bockes argues that since the damage award would be paid from a separate fund, there is no effect on the state treasury so as to afford the Local Department the protection of the Eleventh Amendment. That argument is misplaced on the record before the court. According to the evidence, the Local Department is reimbursed by the state for 80% of its premium payments. Due to the disparate amount of money provided by the state for the premium payments, any judgment from the insurance fund will inexorably affect the state treasury as a majority of state money was paid into the insurance fund and would, therefore, be used to cover a judgment award against the Local Department. The fact that the insurance fund is separate from the general treasury is of no consequence. *See, e.g., Paschal v. Jackson*, 936 F.2d 940, 944–45 (7th Cir.1991) (segregating state money into separate fund does not change fact that recovery is out of state treasury), *cert. denied*, —— U.S. ——, 112 S.Ct. 992, 117 L.Ed.2d 152 (1992). The crucial inquiry is whether state funds will be used to pay for a damage award, which is clearly the case here. Accordingly, the court finds that a recovery of the $13,000 would be, in effect, a recovery of funds from the state prohibited by the Eleventh Amendment.[4]

---

4. The court recognizes that the court of appeals has held that a damage award that would be satisfied from a separate unemployment compensation fund did not violate the Eleventh Amendment. *Brown v. Porcher*, 660 F.2d 1001, 1006–07 (4th Cir.1981), *cert. denied*, 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983). However, *Brown* involved no state money and, therefore, is not controlling. *See id.; see also Dyson v. Lavery*, 417 F.Supp. 103, 107–09 (E.D.Va.1976) (college had judgment against it that could be satisfied out of student activities fee fund, which contained no state money, and therefore, college could not invoke Eleventh Amendment to prohibit retroactive damage award).

The structure and organization of the Local Department and its relationship with the Virginia Department of Social Services ("the Virginia Department") also favors the finding that the Local Department should be treated as the states' alter ego for Eleventh Amendment purposes. First, although in Virginia, the Grayson County Board of Supervisors ("the County Board") appoints and is authorized to remove the members of the Local Board, who, in turn, select the local director and employees, the Virginia Commissioner of Social Services ("the Commissioner") is expressly authorized to remove them. Va.Code Ann. §§ 63.1–45, –62. Second, the County must follow state procedures and guidelines in organizing its Local Department. *See, e.g.,* Va.Code Ann. § 63.1–26. Third, the Local Board is required to submit its budget to the Commissioner. Va.Code Ann. § 63.1–54. Fourth, local boards of social services have not attained the local, independent status traditionally afforded other local boards. *Compare* Va.Code Ann. § 22.1–71 (code section entitled "School board constitutes body corporate; corporate powers"); *Ram Ditta,* 822 F.2d at 458. Finally, the County contributes no more than 20% of the funding for the Local Department, with the remainder coming from varying combinations of state and federal funds.

In sum, the Local Department's structure and organization and its relationship with the Virginia Department, coupled with the fact that most of the judgment would be paid from state funds, preponderate in favor of the conclusion that the Local Department is, in essence, the states' alter ego, and thus, protected by the Eleventh Amendment from a damage award in a § 1983 action in federal court.[5] *Compare Ram Ditta,* 822 F.2d at 458–59 (Parks &

Planning Commission was designated as body corporate, was not required to submit budget to state, was not represented by state attorney general's office, and state exercised no control over Commission personnel matters, and, therefore, court found it to be local agency). That conclusion, however, does not end the court's inquiry because the County, nevertheless, may be subject to liability if the Local Board's actions may be fairly attributed to the County.[6]

## IV.

▇ A county is subject to municipal liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Spell v. McDaniel,* 824 F.2d 1380, 1385 (4th Cir.1987) (quoting *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). " '[P]olicymaking authority' implies authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government." *Spell,* 824 F.2d at 1386; *see, e.g., Bennett v. City of Slidell,* 728 F.2d 762, 769 (5th Cir.1984) ("policymakers act in the place of the governing body in the area of their responsibility"), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). Final authority is "a necessary attribute of 'policymaking authority.' " *Spell,* 824 F.2d at 1386. However, "a municipal agency or official may have final authority to make and implement policy despite a municipality's retention of powers of ultimate control

---

5. Neither party raised nor does the court find any waiver of Eleventh Amendment immunity with regard to the Department or the Board.

6. The reasoning of *Keller II,* which held that a local department of social services in Maryland was, in effect, an agency of the state and, therefore, immune from suit, provides some support. In *Keller II,* the court of appeals stated:

   [t]he Department is a local department of social services operated by the Maryland Department of Human Resources, an agency of the executive branch of state government. The employees of the Department receive fringe benefits and paychecks from the state and perform their duties subject to state personnel policy. State law and procedure dictate how the Department operates and organizes its programs. Only two percent of the Department's funding comes from the county with the remainder coming from the state and federal governments.
   923 F.2d at 32.

over both policy and policymaker. The question is one of authority-in-fact." *Id.* A single decision by an official exercising such authority is sufficient to subject a municipality to § 1983 liability. *Morrash v. Strobel,* 842 F.2d 64, 67 (4th Cir.1987) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479–80, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986)).

■ Though the definition of policymaker is a matter of federal law, the determination of which official or officials fall within this definition is necessarily guided by state law. *Dotson v. Chester,* 937 F.2d 920, 924 (4th Cir.1991) (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 124, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988)). Examining state law, which can include valid local ordinances and regulations, will usually "direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *Id.* From an examination of the control in fact exercised by the County Board through its appointment of Local Board members, the court readily concludes that the Local Board's actions, at least as to personnel matters, are fairly attributable to the County Board and, therefore, the County.

■ The County maintains that a finding by the court that the Local Department is a state agency for Eleventh Amendment purposes would preclude the County from being held liable because it did not employ the tortfeasors—the board members of the Local Department that discharged Bockes without affording her due process. That argument, however, begs the question. In determining whether the County is liable, the question is not by whom are the tortfeasors employed. Rather, the question is whether the tortfeasors were carrying out official County policy—that is, whether their conduct is fairly attributable to the County. *See Witt v. Harbour,* 508 F.Supp. 378, 380 n. 5 (W.D.Va.1980), *aff'd,* 644 F.2d

883 (4th Cir.), *cert. denied,* 454 U.S. 879, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981). The court has concluded that because the Local Board exercised authority that it was expressly authorized by law to exercise and because ultimate local control over the Local Board is given to the County Board, the decision to discharge Bockes is fairly attributable to the County.

The structure of the chain of command of the Local Department is somewhat unique. As previously mentioned, the Local Board, which is expressly authorized to hire and fire the local director, is appointed and can be removed by the County Board. At the same time, the Virginia Department retains oversight responsibilities and is authorized to discharge Local Board members as well as Local Department employees who fail to meet state standards. Thus, authority over day-to-day personnel matters is exercised at the local level with ultimate local control resting with the County Board, which is expressly authorized to discharge members of the Local Board at will. *Cf. Dotson,* 937 F.2d at 928–32 (concluding that sheriff who was designated as state official was acting as county official, and thus, subjected county to § 1983 liability); *Hughes v. Halifax County Sch. Bd.,* 855 F.2d 183, 185 (4th Cir.1988) (school board, not maintenance supervisor lacking authority to control and supervise personnel, is policymaker for school personnel decisions), *cert. denied,* 488 U.S. 1042, 109 S.Ct. 867, 102 L.Ed.2d 991 (1989); *Morrash v. Strobel,* 842 F.2d 64, 67–68 (4th Cir.1987) (city council, not director of public safety, is policymaker, because council retains right to decide how to utilize personnel). Given such a structure, it is not inconsistent to find that the discharge of the local director by the Local Board is an act fairly attributable to the County.[7] On the one hand, the County cannot, in effect, maintain control over the personnel decisions of the Local Department and, on the other hand, escape ac-

7. Additional authority indicates clearly that the Local Board is the policymaker for personnel matters. According to the terms of Volume 1A, a publication of the Virginia Department, the Local Board is the "appointing authority" for all personnel actions. Volume 1A, Chapter A at 11. Moreover, the Handbook for Local Boards of Social Services notes that the Local Board is a policymaking body. Handbook at 17.

**1226**

countability simply because the Local Department technically can be classified as an agency of the state for Eleventh Amendment purposes. *See Dotson,* 937 F.2d at 928 ("the Sheriff is not always a state employee or always a county employee. He may, on occasion, be both, or sometimes one and sometimes the other. *It all depends on the particular function the Sheriff is performing.*") (emphasis added).

### V.

For the above-stated reasons, the court finds that Bockes was entitled to but did not receive procedural due process before she was discharged, that the Eleventh Amendment precludes a judgment award against the Local Department and the Local Board, and that the County is liable for the Local Board's decision to discharge Bockes without affording her procedural due process. In accordance with the jury's verdict, therefore, the court will enter judgment against the County in the amount of $20,000.